**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Elizabeth EHRLICH,**
**Defendant–Appellant.**

**No. 89–5579.**

United States Court of Appeals,
Fifth Circuit.

May 18, 1990.

Rehearing Denied June 14, 1990.

John R. Carter, Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Gregory D. Anderson, LeRoy Morgan Jahn, Philip Police, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellant.

Before KING, JOHNSON and HIGGINBOTHAM Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Elizabeth Ehrlich appeals from her conviction on six counts of embezzlement, claiming lack of evidence of an essential element of the offenses charged, and reversible error by the district court in permitting certain questioning of a character witness and delivering an unbalanced supplemental charge to the jury. Ehrlich also appeals her sentence, arguing that the district court incorrectly applied the Sentencing Guidelines. Finding no error, we affirm.

## I

Ehrlich was employed as a loan clerk by the MedCentre Bank in San Antonio, Texas, a federally insured financial institution. Ehrlich was responsible for "loan balancing." She would verify that, after Electronic Data Systems had processed the previous day's records, the loan system totals balanced with MedCentre's general ledger account totals. Ehrlich would transfer funds among the various accounts by filling out offsetting debit and credit slips to correct the balances of the affected accounts caused by clerical, data entry, or computer error in the computer balancing process.

While she worked at the bank Ehrlich and her mother maintained a checking account at MedCentre. Early in 1988 Ehrlich's checking account was often overdrawn. By May 19, 1988, her account was overdrawn by $2000.23, and it had been overdrawn continuously since March 18, 1988. Because Ehrlich was then unable to pay the overdraft, MedCentre advanced Ehrlich $2000 on May 20 as an offset. By June 10, 1988, the account showed a positive balance that continued until the end of July.

In late July MedCentre began investigating deposits to Ehrlich's checking account made during the previous weeks. The investigation found debit and credit slips in Ehrlich's handwriting matching the deposits made to the account that showed Ehrlich had transferred funds from MedCentre general ledger accounts to her own checking account. MedCentre suspended and then fired Ehrlich.

A federal grand jury indicted Ehrlich on six counts of "embezzling, stealing, abstracting, and purloining funds in excess of $100," in violation of 18 U.S.C. § 656. At trial the court, without objection, struck the allegations of "stealing, abstracting and purloining," submitting the case to the jury only on a theory of embezzlement. After the jury's guilty verdict the district court denied a renewal motion for a judgment of acquittal and Ehrlich's motion for new trial. The motion for new trial urged grounds of improper admission of evidence, failure to balance a supplemental jury instruction, and that the verdict was against the weight of the evidence.

At the sentencing hearing the district court overruled Ehrlich's objection to a two level increase in offense level for abuse of position of trust, under Sentencing Guideline § 3B1.3. The sentencing range was 8 to 14 months, and the district court sentenced Ehrlich to 12 months incarceration, three years supervised release, special assessments of $300, and restitution of $3,660.72.

Ehrlich appeals both her sentence and her conviction.

## II

### A. Insufficiency of Evidence

■ Ehrlich was charged with six counts of embezzlement, in violation of 18 U.S.C. § 656. Embezzlement differs from stealing, abstracting, or purloining funds in that

"[e]mbezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895), quoted in *United States v. Sayklay*, 542 F.2d 942, 944 (5th Cir.1976). Ehrlich argues that the government's evidence was insufficient to prove embezzlement in that it failed to show that the funds which she appropriated had been intrusted to her or had come into her lawful possession.

In *Sayklay*, the defendant bank employee worked as a bookkeeper and had access to other employees' account numbers, a check-encoding machine, and blank counter checks. To obtain cash, the bookkeeper encoded the blank checks with other employees' account numbers and then cashed the checks through a teller. The defendant signed her own name to the checks because she knew that the teller would not verify ownership of the account, and when the checks arrived at the bookkeeping department, the defendant destroyed them. 542 F.2d at 943. This court reversed the convictions for embezzlement, explaining that the "essence of embezzlement lies in breach of a fiduciary relationship deriving from the entrustment of money." *Sayklay*, 542 F.2d at 944. She had no lawful right of access to those accounts, and therefore had no lawful possession.

Ehrlich maintains that her appropriations mirror those made in *Sayklay*, for her position as a MedCentre employee gave her access to the "tools" necessary to convert bank money to her own use, but did not give her lawful possession of the funds. We cannot agree, for her position gave her more than access to the tools necessary for conversion. Ehrlich had loan balancing responsibilities, and in giving her those responsibilities MedCentre entrusted her with control and constructive possession of funds in its general ledger accounts. She routinely and lawfully moved funds between various MedCentre accounts through the use of debit and credit slips. Ehrlich converted funds to her account in the same manner. Because of her position she had lawful access to the funds, and the authority to move them from one account to another. She simply moved them from the general ledger account into her own account instead of into an account to which they properly should have been moved.

*Sayklay* distinguished between unlawful access to funds, such as an employee using another employee's account number, and lawful access to funds, such as here where Ehrlich had the authority to move the funds. 542 F.2d at 944. This is not a situation where Ehrlich's position as a bank employee did no more than allow her to take debit and credit slips out of supplies and use them improperly. She lawfully had the power to move funds from one account to another. It is not like the appropriation in *United States v. Mack*, 525 F.Supp 382 (N.D.Tex.1981), where the defendant operated a machine and had no discretion to decide when and where to move her employer's funds. *Mack*, unlike Ehrlich, did not have the authority or duty to initiate such transfers, and thus had no custody or lawful possession over the funds that she converted.

The evidence shows that Ehrlich did have lawful access to the funds and lawful control over their movement. Therefore, the evidence was sufficient to support her conviction.

### B. Errors at Trial

Ehrlich argues that the trial court committed reversible error in permitting "have you heard" type questions to be asked of a character witness for the defense. She maintains that there was no proper basis for such questions, for they dealt with Ehrlich's reputation for truth and veracity, while the scope of direct examination only dealt with Ehrlich's reputation for honesty. This contention is meritless. The concepts of truth and honesty are related. "*Honesty* implies truthfulness, fairness in dealing, and absence of fraud, deceit and dissembling. *Veracity* is truthfulness in expression." *The American Heritage Dictionary of the English Language* 632 (New College Edition 1980) (emphasis in the original). "Truthful" is defined as "[c]onsistently telling the truth;

honest." *Id.* at 1378. Thus, as the district court explained in denying Ehrlich's motion for new trial,

> the term "honesty" encompasses more than either of the terms "truthfulness" or "veracity." "Honesty" connotes a freedom from deception in both word and deed....

In questioning the witness about Ehrlich's honesty, the scope of the direct examination necessarily encompassed Ehrlich's truthfulness. There was no error in permitting this questioning.

■ The district court's initial charge to the jury was made orally, with no written copy provided to the panel. While deliberating, the jurors requested a "Copy of the 5 Elements that must be considered." In response, the court sent the jury a written supplemental instruction that stated the essential elements of embezzlement, summarized those elements, and refered to the prosecution's burden of proving the offense beyond a reasonable doubt. The court denied Ehrlich's request that its supplemental charge include instructions on reasonable doubt, presumption of innocence, and burden of proof, and overruled her objection to the supplemental charge being given in writing. Ehrlich contends that this was reversible error.

■ We disagree. A trial court generally may limit a supplemental charge to the specific instruction requested by the jury. *United States v. Acosta,* 763 F.2d 671, 677 (5th Cir.), *cert. denied,* 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985). As we have said before, "there is no error if the trial judge in supplemental instructions charges exactly as he was requested." *United States v. Chatham,* 568 F.2d 445, 451 n. 10 (5th Cir.1978).

Where the district court initially charges the jury orally, but later responds in writing to a request for supplemental instructions, there is no error unless, under the totality of the circumstances, the court's written response creates an unbalanced charge prejudicial to the defendant. *See Acosta,* 763 F.2d at 677. The jury specifically requested reinstruction on the five essential elements of embezzlement, and that is exactly what the court gave in its supplemental instruction. The judge avoided confusion by simply answering their question. *See United States v. Shaw,* 701 F.2d 367, 395 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984); *Acosta,* 763 F.2d at 677; *Chatham,* 568 F.2d at 445. The jury also requested the supplemental instruction in writing by asking for a *copy,* rather than for a rereading.

The court had instructed the jury fully about the presumption of innocence and the government's burden to prove guilt beyond a reasonable doubt in its initial charge. The court admonished the jury further that:

> [Y]ou must follow all of my instructions as a whole. You have no right to disregard or give special attention to any one instruction....

In view of the entire charge, and in light of the jury's specific inquiry, it cannot be said that the supplemental instruction created a prejudicial imbalance in the charge as a whole.

## C. Sentencing

■ Ehrlich argues that a 2 point upward adjustment in her total offense level under § 3B1.3 of the Sentencing Guidelines for Abuse of Position of Trust was clearly erroneous. A district court's application of § 3B1.3 is a sophisticated factual determination that will be affirmed unless clearly erroneous. *See United States v. Mejia–Orosco,* 867 F.2d 216, 221 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). The district court found that "there is sufficient evidence to indicate that the defendant did maintain a position of private trust and abused that position in a manner that significantly facilitated the commission of the offense." Ehrlich contends that this was clearly erroneous, relying on the Commentary to § 3B1.3, which provides in pertinent part:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

*Guidelines,* § 3B1.3, Commentary, Application Note 1. Ehrlich argues that she is like an ordinary teller, and that her position merely afforded her an opportunity to embezzle "that could as easily have been afforded to other persons."

Perhaps any number of MedCentre employees could have obtained and executed the same instruments, debit and credit slips, and then routed them to EDS for processing, but Ehrlich's position of trust gave her specialized knowledge of the EDS system, as well as information about non-reconciled MedCentre accounts, that few other employees shared. More importantly, Ehrlich's position gave her the authority to routinely initiate loan balancing transactions, which facilitated her embezzlements. Ehrlich was given the authority to balance the loan suspense account, which she debited to effect three of the six embezzlements. This account is large and important, and MedCentre officials indicated that the bank assigns control of the loan suspense account only to employees deemed trustworthy and highly responsible. We cannot find, based upon this record, that the district court was clearly erroneous in finding that Ehrlich used a position of trust to facilitate the commission of the offenses for which she was convicted.

AFFIRMED.