**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leroy K. BROWN, Defendant–Appellant.**

No. 91–1225.

United States Court of Appeals,
Fifth Circuit.

Sept. 6, 1991.

Paul Roberts, Asst. U.S. Atty., Robert Q. Whitwell, U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before KING, JOHNSON and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Defendant–Appellant Leroy K. Brown ("Brown") entered a conditional plea of guilty to the charge of possessing heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a) and (b). There are two issues raised in this appeal. First, this Court must decide if there was probable cause to issue a search warrant to search an Express Mail package addressed to Brown. Second, this Court must determine if the district court properly sentenced Brown pursuant to the sentencing guidelines by increasing Brown's base offense level for abuse of a position of trust. Finding no reversible error, this Court affirms.

## I. FACTS AND PROCEDURAL HISTORY

Postal inspectors discovered a scheme in which prison inmates at the Mississippi State Penitentiary at Parchman, Mississippi ("Parchman"), used unsuspecting civilians to pass altered money orders. The money orders were smuggled in and out of Parchman through inmates, their relatives and Parchman employees. Two persons, a confidential informant and a former Parchman inmate, advised postal inspectors on separate occasions that Leroy Brown was involved in transporting altered money orders and cash in and out of Parchman. To corroborate this information, Postal Inspector R.D. Waller ascertained that Brown had been employed inside Parchman since approximately 1983. At the time Inspector Waller received the tips, Brown was acting as a correctional case manager. Brown admitted that his position allowed him ac-

Robert Lawson Holladay, Townsend, McWilliams & Holladay, Drew, Miss. (court-appointed), for defendant-appellant.

cess to the prisoners who were involved in the money order scheme.

Investigators obtained further evidence that led them to suspect that Brown could be receiving money orders and passing them to the prisoners. On June 13, 1990, Brown received an Express Mail package. The return addressee listed was Beverly Traylor of Los Angeles, California. Then in August 1990, Brown contacted the post office to inquire whether the post office had received another Express Mail package from Los Angeles. After the post office received this second package, investigators contacted Traylor in California. Traylor denied sending any packages, denied knowing Brown, and denied having any connection to the State of Mississippi. Nonetheless, she consented to a search of the second package, which listed her as the sender.

On August 17, 1990, postal inspectors obtained a search warrant from Magistrate Judge Norman Gillespie to search the Express Mail package sent to Brown. The warrant specified that the items to be seized were United States postal money orders, altered money orders, proceeds and correspondence. Upon opening the package, investigators found not only thirty United States postal money orders, but also two packets containing a total of almost six grams of heroin.

Postal inspectors notified Brown of the arrival of the package. When Brown picked up the package, he was placed under arrest. Brown admitted to authorities that he was a drug user. He stated that he was expecting the package and that he knew it would contain drugs. Moreover, Brown revealed that the earlier Express Mail package he received also contained drugs. While acknowledging that Parchman inmates had pressured him to smuggle money orders into the prison, Brown denied that he had actually participated in a scheme to smuggle money orders.

Brown was indicted on two counts. Count One charged Brown with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a) and (b). Count Two charged him with using a communication facility to cause and facilitate the commission of a drug crime, in violation of 21 U.S.C. § 843(b). Brown filed a motion to suppress the evidence obtained as a result of the search of the Express Mail package. After conducting a hearing and reviewing arguments, the district court denied Brown's motion to suppress. Subsequently, Brown entered a conditional plea of guilty to Count One pursuant to Fed. R.Crim.P. 11(a)(2). The conditional plea allowed Brown to appeal the district court's denial of his motion to suppress.

The presentence investigation report prepared by the probation officer calculated Brown's base offense level at 14. The district court decreased the offense level by two points under § 3E1.1, finding that Brown had accepted responsibility. At the same time, the district court increased Brown's offense level by two points under § 3B1.3 for abusing a position of trust. The final sentence of 21 months incarceration was within the guideline range. Brown timely appealed.

## II. DISCUSSION

### A. *Search Warrant*

 A valid search warrant may be issued only upon a finding of probable cause. The information necessary to show probable cause must be contained within a written affidavit given under oath. It is clear that probable cause does not require proof beyond a reasonable doubt; "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). A magistrate's determination is entitled to great deference by reviewing courts. *Illinois v. Gates*, 462 U.S. 213, 236 n. 10, 103 S.Ct. 2317, 2331 n. 10, 76 L.Ed.2d 527 (1983). A magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960).

■ Clearly, a "bare bones" affidavit is insufficient to establish probable cause.[1] The affidavits must supply the magistrate with sufficient information to determine that probable cause exists. In the instant case, the affidavit on which the magistrate relied is not a "bare bones" affidavit: it contains sufficient information to support a finding of probable cause.[2] In the affidavit, the affiant detailed the nature of the money order scheme[3] and stated that two informants on two occasions advised him that Brown was connected with the scheme. The affiant expressly attested to the reliability of one of the informants. The fact that two different informants inculpated Brown lends credibility to the information in the affidavit.

Other details connected Brown with the offense. For instance, the statements of the informants were corroborated in part by the inspector's discovery that Brown was employed as a case manager at Parchman and, therefore, had the opportunity to pass money orders in and out of the prison. In addition, the affidavit recited that the affiant had conducted an investigation of the Express Mail packages and discovered that the listed sender had no knowledge of Brown or the packages. Though the affidavit did not expressly connect the packages with the scheme, the magistrate could have reasonably inferred this connection from the affidavit.[4] In sum, this Court finds that there was a substantial basis for the magistrate's finding of probable cause.

■ Brown advances four arguments to support his contention that the affidavit failed to establish probable cause. Three of these arguments relate to the sufficiency of the contents of the affidavit. First, Brown argues that the affidavit did not detail the manner in which the information was obtained and gathered. Second, Brown contends that there was no indication that the informants or the affiant had personal knowledge of the facts recited in the affidavit. Third, Brown argues that the affidavit fails to substantiate the informants' reliability. None of these three arguments, however, are persuasive.

The use of informants plays a legitimate role in criminal investigations. *See Gates*, 462 U.S. at 237, 103 S.Ct. at 2332. The Court in *Gates* explicitly rejected the two prong test enunciated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which required the magistrate to separately evaluate (1) the informant's basis of knowledge and (2) the informant's veracity or reliability. *Gates*, 462 U.S. at 230–231, 103 S.Ct. at 2328. After *Gates*, the Government no longer has to establish the *Spinelli* elements independently; an informant's basis of knowledge, veracity and reliability are

> closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Id.* at 230, 103 S.Ct. at 2328. Rather than adopt rigid rules regarding the use of informants, the Supreme Court opted for a

---

1. Examples of "bare bones" affidavits include one that states the affiant "has cause to suspect and does believe" that liquor illegally imported is located on certain premises, *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), and one where the affiants "have received reliable information from a credible person and do believe" that heroin is stored in a home, *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

2. "Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in [evaluating affidavits for search warrants]." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

3. Mere conclusory statements are insufficient to constitute probable cause. The description of the money order scheme in the affidavit could be considered conclusory by itself. However, the affidavit contains other facts which adequately demonstrate probable cause for the existence of a money order scheme.

4. *See, e.g., United States v. Wylie*, 919 F.2d 969, 975 (5th Cir.1990) (though the affidavit lacked direct evidence, the Court recognized the magistrate's ability to draw common sense conclusions from it); *United States v. Holzman*, 871 F.2d 1496, 1510 (9th Cir.1989) ("Direct evidence linking criminal objects is not required for the issuance of a search warrant. A magistrate need only determine that a fair probability exists of finding evidence.") (citations omitted).

"totality-of-the-circumstances" approach to a magistrate's finding of probable cause. *Id.* at 230, 103 S.Ct. at 2328. Brown's arguments fail to recognize that the finding of probable cause does not require the certainty associated with formal trials. *Id.* at 246, 103 S.Ct. at 2336. There is no requirement that an affidavit detail the manner in which the affiant gathered information or that the affiant indicate that informants have personal knowledge of the events detailed in the affidavit. The only requirement is that, under the "totality of the circumstances," the affidavit demonstrates that probable cause exists. In this case, it does.

■ Brown's fourth argument is that the affidavit is improper because it is based on hearsay. This argument lacks merit. An affidavit may rely on hearsay as long as it presents "a substantial basis for crediting the hearsay." *Id.* at 241–242, 103 S.Ct. at 2333–34 (quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). As already noted, the affidavit here presented such a substantial basis. The affidavit contains other information within the personal knowledge of the affiant that corroborates the hearsay in the affidavit.

In sum, this Court concludes that there was probable cause to issue the search warrant. The magistrate had a substantial basis for concluding that there was a fair probability that the search of the Express Mail package would uncover evidence of the unlawful money order scheme. The district court did not err in refusing to suppress the evidence obtained as a result of the search of the Express Mail package.

### B. *Abuse of a Position of Trust*

Section 3B1.3 of the Sentencing Guidelines provides that a court may increase a defendant's offense level by two points "[i]f the defendant abused a position of public or private trust . . . in a manner that

significantly facilitated the commission or concealment of the offense. . . ." The commentary to § 3B1.3 explains that

> [t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

The district court in the instant case ruled that Brown violated the trust placed in him as a correctional officer when he committed the crime. The court explained that Brown agreed to allow Parchman inmates to arrange for someone on the outside to mail Brown drugs and money orders.[5] Accordingly, the court increased Brown's offense level two points.

■ The applicability of § 3B1.3 to Brown's conduct is a sophisticated factual determination. *United States v. Ehrlich*, 902 F.2d 327, 330 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991). This Court must affirm unless the district court's conclusion is clearly erroneous. *Id.* By its terms, § 3B1.3 encompasses two factors: (1) whether the defendant occupies a position of trust, and (2) whether the defendant abused his position in a manner that significantly facilitated the commission or concealment of the offense. Brown concedes that he enjoyed a position of trust as a Parchman employee. Appellant's Opening Brief, at 32. Thus, we need only focus on the second factor.

■ Brown contends that his position did not substantially contribute to his offense. Brown notes that, according to the commentary in the sentencing guidelines, the section 3B1.3 adjustment does not apply to embezzlement by an ordinary bank teller. He argues that the position he abused was akin to that of the bank teller

---

**5.** In sum, Brown
used his position as a counselor at Parchman penitentiary to acquire illegal drugs through the mail, and this is a violation of the trust placed in him as a counselor to prisoners because he used that position to cause others

to commit serious felonious acts which benefited [Brown].
Order, March 8, 1991, at 2. The district court noted, however, that it was not finding as a fact that Brown intended to distribute the contents of the Express package to any inmate.

in the commentary. But in comparing himself to the bank teller example, Brown misconstrues the example's import. The Ninth Circuit has explained that the reason an ordinary bank teller cannot abuse a position of trust is, quite simply, that an ordinary bank teller does not occupy a position of trust. *United States v. Hill*, 915 F.2d 502, 505 (9th Cir.1990).[6] In contrast to the bank teller, other bank employees do occupy positions of trust. The courts have ruled that embezzlement by other types of bank employees can support a section 3B1.3 adjustment. *See, e.g., United States v. McMillen*, 917 F.2d 773, 776 (3d Cir.1990) (savings and loan branch manager); *Ehrlich*, 902 F.2d at 331 (a bank loan clerk). In the instant case, Brown concedes that he occupies a position of trust; accordingly, the bank teller example is not analogous to Brown's situation.

Brown argues that his position could not have facilitated the commission of his offense because other persons at Parchman could have taken advantage of the opportunity to become involved in the offense. The Ninth Circuit in *United States v. Hill* addressed a similar argument. In *Hill*, a long distance truck driver was convicted of stealing goods from interstate commerce. *Hill*, 915 F.2d at 504. The defendant argued that his position did not significantly facilitate the commission of the offense because any other truck driver could have exercised the same opportunity. *Id.* at 507. The Ninth Circuit disagreed, noting that the proper inquiry was not whether any other truck driver could have exercised the opportunity, but rather whether any other person could have exercised the opportunity. *Id.* at 507–08. Specifically, the court reasoned that the relevant question was

> whether Hill, relative to all people in a position to conspire to steal goods from interstate commerce (i.e., the public at

large), was in a superior position as a result of a trust relationship.

*Id.* at 508.

Likewise, the question here is not whether any other Parchman employee could have committed the offense, but rather whether Brown occupied a superior position—relative to all people in a position to possess with intent to distribute heroin (*i.e.*, the general public)—as a result of his counselor role. The answer must be that he occupied a superior position. His job responsibilities afforded him the unique opportunity of interacting with convicted felons—including the inmate who arranged the mailing—without direct supervision. As a result of his position, Brown was able to obtain controlled substances.[7]

The public places a great deal of trust in correctional officers. They expect that the officers will not participate with inmates in schemes to violate the law. The district court found that Brown conspired with a Parchman inmate and an outside co-conspirator to receive the heroin and money orders. Clearly, Brown was able to do this only because of his inside position. Brown therefore violated the public's trust. Consequently, the district court did not clearly err in finding that Brown's abuse of his position as a correctional case manager significantly facilitated the offense. The increase of Brown's offense level by two points under § 3B1.3 is affirmed.

## III. CONCLUSION

This Court accords great deference to a magistrate's finding of probable cause to issue a search warrant. In this case, the affidavit contained sufficient information to support the magistrate's determination that the Express Mail package mailed to Brown would contain evidence of a crime. Therefore, this Court affirms the district court's refusal to grant Brown's motion to

---

**6.** Some courts either fundamentally disagree with the bank teller example or attempt to explain it by suggesting that a teller's position of trust may already be an element of the offense of embezzlement and therefore already included in the base offense level. *See United States v. Drabeck*, 905 F.2d 1304, 1306–07 (9th Cir.1990), and cases cited therein.

**7.** The Ninth Circuit has stated that § 3B1.3 does not apply only to abuses of trust that involve the use of a special privilege accorded someone in that position of trust. *United States v. Foreman*, 926 F.2d 792, 796 (9th Cir.1990). The court noted that the statutory language applied to an abuse of a position of trust and did not limit such abuse to one with special privileges. *Id.*

suppress the evidence obtained in the search of the Express Mail package. In addition, the district court did not clearly err in increasing Brown's offense level by two points under § 3B1.3 for abusing a position of trust. Brown's conviction and sentence are affirmed.

AFFIRMED.