UNITED STATES of America

v.

**Kimberly L. ODOMS.**

No. 87 CR 915.

United States District Court,
N.D. Illinois, E.D.

Aug. 12, 1992.

Fred Foreman, U.S. Atty., Joshua T. Buchman, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

John A. Meyer, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

ZAGEL, District Judge.

The defendant, a postal employee, pled guilty to one count of knowingly and intentionally stealing from the United States Mail a first class letter containing U.S.D.A. food stamps. In calculating the appropriate sentence under the sentencing guidelines, the probation officer applied section 2B1.1 for theft, which required a base offense level of four. The base level increased to six, under section 2B1.1(b)(4), because the theft involved undelivered mail. After a two point reduction for acceptance of responsibility, the total base offense level reverted to four. The presentence report does not include the two point increase in the defendant's offense level under Sentencing Guideline 3B1.3, for abuse of position of trust.

I. Current, Disputed Standards

Guideline 3B1.3 imposes the two level increase "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense...." The commentary to the guideline states:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could have as easily been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

The Ninth Circuit, affirming the application of the guideline in *United States v. Hill,* 915 F.2d 502 (9th Cir.1990), set forth one principle and two indicia for determining whether a defendant occupies a position of trust. After studying the commentary to the guideline and earlier cases applying the guideline adjustment[1], the Ninth Circuit selected as the principle that "the primary

---

**1.** *United States v. Ehrlich,* 902 F.2d 327 (5th Cir.1990) (bank loan clerk); *United States v.* *McMillen,* 917 F.2d 773 (3rd Cir.1990) (savings and loan branch manager).

trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *Id.* at 506. The corresponding indicia adopted by the Ninth Circuit and also derived from the ordinary bank teller exclusion were the "inability of the trustor objectively and expediently to determine the trustee's honesty" and the "ease with which the trustee's activities can be observed." *Id.*

Using these standards, the Ninth Circuit determined that Hill held a position of private trust and abused it within the meaning of the guideline. Finding the ordinary bank teller reference in the commentary "significant," the court searched for characteristics which supported the exclusion. The bank teller is subject to a daily accounting of financial transactions and can be easily observed by branch manager, the court reasoned. The interstate truck driver, on the other hand, has the opportunity to steal the cargo unobserved and, in this case, the trustors, families moving overseas, had no expedient means by which to check for missing items. The court concluded that the bank teller was not in a position of trust and Hill was.

Once the court decided that Hill, as a truck driver transporting household belongings between states, occupied a position of private trust, it analyzed whether he abused the position "in a manner that significantly facilitated the commission or concealment of the offense," as dictated by the guideline. U.S.S.G. § 3B1.3. Looking to the commentary for guidance on the question of facilitating the offense, the court focused on the language, "merely ... provided an opportunity that could as easily have been afforded to other persons." It disagreed with the defendant that the other persons phrase meant compared to other truck drivers. Instead, the court held that the proper question "is whether Hill, rela-

tive to all people in a position to conspire to steal goods from interstate commerce (*i.e.,* the public at large), was in a superior position as a result of a trust relationship." *United States v. Hill,* 915 F.2d at 507–08. Interpreted this way, Hill's position clearly gave him a special opportunity to steal the goods, and thus facilitated the commission of the offense.

The majority of courts which have confronted the applicability of the abuse of trust guideline use standards similar to the *Hill* principle and determining factors. The defendant receives the abuse of trust increase if his activities are not supervised, and are not routinely checked by his employer.[2] Most courts have compared defendants to members of the general public in determining whether the same opportunity is afforded to other persons.[3]

In *United States v. Arrington,* 765 F.Supp. 945 (N.D.Ill.1991), Judge Shadur declined to apply the abuse of trust guideline to a "casual mailhandler" and took exception to both the *Hill* analysis and the United States Attorney's zeal in pursuing the upward departure for postal employees. The defendant, described as a " 'casual mailhandler'—someone charged with various tasks involving the sorting, processing and stamping of mail," did not hold a position of trust because he had no "special level of responsibility" and "his access to mail was no different than that of thousands of postal workers." *Id.* at 947. Judge Shadur cited the applicability of the same guideline, § 2B1.1, for mail theft by a postal employee or any other person and the increase under § 2B1.1(b)(4) for a minimum offense level of six if the theft involved undelivered mail, again without distinguishing postal employees, as evidence that the Sentencing Commission did not intend the abuse of trust increase to apply to mail theft by postal employees.

**2.** *See, e.g., United States v. Milligan,* 958 F.2d 345 (11th Cir.1992) (no daily audits of post office window clerk).

**3.** *See United States v. Castagnet,* 936 F.2d 57, 62 (2nd Cir.1991); *United States v. Brown,* 941 F.2d 1300, 1305 (5th Cir.1991) (correctional officer

compared to general public); *United States v. Zamarripa,* 905 F.2d 337 (10th Cir.1990) (babysitter compared to "man on the street"). *But see United States v. Lange,* 918 F.2d 707, 710 (8th Cir.1990) (postal employee had superior opportunity compared to other postal employees).

Drawing on his experience, Judge Shadur concluded that, contrary to the *Hill* court's analysis, the bank teller example must refer to low level, relatively unskilled employment. For one thing, many "ordinary bank tellers have engaged in long undetected and quite sophisticated embezzlements," a fact which undermines the soundness of both *Hill* indicia—the ease with which bank tellers' activities are observed and the ability to determine their honesty objectively and expediently. *Arrington*, 765 F.Supp. at 949. Recognizing that access to money is inherent to the bank teller's job and that *"by its very nature* it provides the employee with extraordinary opportunities for criminal activity,"* Judge Shadur found those qualities "equally true of ordinary postal employees." *Id.* Therefore, the abuse of trust guideline commentary which excludes bank tellers must exclude low level mail handlers, too. Expressing his concern with the consistent argument that low level postal employees should be subject to the increase despite unfavorable rulings in the Northern District, Judge Shadur admonished the United States Attorney's office to appeal or abandon its position.

II. Application of the Current Standards

The United States Attorney argues that by stealing mail while employed by the Postal Service as an automated mark-up clerk, defendant abused her position of public trust in the manner contemplated by the guideline. The defendant prepared forwarding address labels and affixed them to pieces of mail. As a daily part of her job, she had contact with numerous pieces of mail entrusted to her by the public. Thus, not only did the defendant have access to valuable pieces of undelivered mail, she also could physically handle the mail without arousing suspicion by fellow employees or supervisors because it was part of her job. Her employment by the Postal Service placed her in a position of public trust because there was no record or means to track the undelivered mail she handled and she could not be watched at all times by postal inspectors. Because she used her opportunity to handle the mail, not afforded to other people who might want to steal

undelivered mail, she abused her position in a manner which significantly facilitated the commission and concealment of her crime.

The defendant argues that she should not be subject to the increase since her low level position, like that of the ordinary bank teller specifically excluded in the commentary, holds no special responsibilities or opportunities. She submits an affidavit to the Court, describing the ease with which the postal inspectors could observe her, both *obviously* and surreptitiously. She worked in the Main Post Office in an "open area" surrounded by observation portals and supervisors' offices equipped with one way mirrors. Therefore, she did not hold a position of trust within the guideline's intent.

The defendant uses Judge Shadur's opinion in *Arrington* to boost her argument that her "ordinary" low level position makes the guideline inapplicable. In his opinion, Judge Shadur points out the problems with squaring the ordinary bank teller exclusion with a finding that the guideline applies to a low level postal employee. She argues that since she did not have any special responsibilities and her access to mail is like that of thousands of other clerks working for the Postal Service, she is like an ordinary bank teller, excluded from the guideline. Additionally, the defendant argues that abuse of trust is accounted for in § 2B1.1(b)(4) which increases the base offense level to at least six if the theft involved undelivered mail, a provision which applies to any person including postal employees.

■ Under the current analysis, the defendant should be assessed a two level increase under § 3B1.3 for abuse of a position of trust. Using the *Hill* criteria, the defendant could commit a difficult-to-detect wrong. While the post office is equipped with one way mirrors and viewing portals, the open area where the defendant works is filled with employees. If she were under suspicion for some reason, inspectors could focus their attention on her, but otherwise her activities would not be easy to observe when compared with the typical bank tell-

er's activities. The number of tellers working at a given time in the typical bank is relatively small when compared with postal clerks working in the main post office in Chicago. The small number of tellers, combined with the rather sedate atmosphere in most banks, makes it easier for supervisors or branch managers to observe the tellers. While the defendant's employment inside the post office building makes her easier to observe than the mail carrier who is completely hidden from view for significant periods of time, she is more difficult to observe than a bank teller. In addition, she cannot be observed by the members of the public who have entrusted her with their mail, unlike the bank teller who faces the bank customers throughout the day.

The second prong of the test also places the defendant within the abuse of trust guideline. It is very difficult to assess her honesty in an objective and expedient way. There is no record of undelivered mail, and therefore no way to detect her thievery by an auditing procedure, unlike the financial transactions undertaken by an ordinary bank teller.

Since this analysis indicates that the defendant held a position of trust, the question becomes whether she abused her position "in a manner that significantly facilitated the commission or concealment of the offense. . . ." U.S.S.G. § 3B1.3. When compared with all other people, *i.e.*, the general public, who would like to steal undelivered mail, the defendant has significantly better opportunities to commit and conceal her theft. She also is in a better position to steal undelivered mail than other postal employees whose duties do not include constant handling of pieces of mail.

The application of the abuse of trust guideline to a postal employee does not present double-counting problems. Ordinary theft does not include an element of abuse of trust. The increase under § 2B1.1(b)(4) which covers theft of undelivered mail also does not encompass an abuse of trust; any defendant who breaks into a government mailbox or an individual's mailbox to steal undelivered mail is subject to that increase. A postal employee who has special access to undelivered mail and who abuses her position of trust to facilitate the theft of undelivered mail should be penalized under the abuse of trust guideline. While every United States Postal Service employee may be imbued with the public trust in the sense that the First Circuit used it in *U.S. Postal Service v. American Postal Workers Union, AFL–CIO,* 736 F.2d 822 (1st Cir.1984), a smaller but substantial number who handle undelivered mail and through their jobs have special opportunities and access to steal mail without being detected may have positions of public trust as defined by the sentencing guideline.

## III. A New Standard

The caselaw applies the two level enhancement under the abuse of trust guideline to defendants in diverse positions from truck drivers[4] to bank loan officers[5] to babysitters[6] to mail carriers[7] to security guards[8]. Two basic principles have

---

**4.** *United States v. Hill,* 915 F.2d 502 (9th Cir. 1990) (interstate truck driver is in position of trust because no surveillance).

**5.** *United States v. McMillen,* 917 F.2d 773 (3rd Cir.1990) (remanded for resentencing, savings and loan branch manager abused position of trust in approving fraudulent loans to himself under a fictitious name); *United States v. Ehrlich,* 902 F.2d 327 (5th Cir.1990) (loan clerk was in a position of trust through computer access and loan balancing responsibilities, position facilitated commission).

**6.** *United States v. Zamarripa,* 905 F.2d 337 (10th Cir.1990) (remanded for resentencing, babysit-

ter is in position of trust and position facilitates commission of sexual crime against child).

**7.** *United States v. Ajiboye,* 961 F.2d 892 (9th Cir.1992) (mail carrier is in quintessential position of trust since he is free from surveillance and does not account for particular pieces of mail, abuses position when he steals mail).

**8.** *United States v. Parker,* 903 F.2d 91 (2nd Cir. 1990) (security guard who uses access to details about payroll delivery in conspiracy and robbery abuses position of trust); *United States v. Brown,* 941 F.2d 1300 (5th Cir.1991) (correctional case manager who facilitated transfer of money orders and drugs into prison abused

emerged underlying the application of the guideline: first, positions of trust must confer the access or authority (not necessarily the right) to handle valuable things or to direct the disposition of such things [9]; and second, the access or authority increases the defendant's ability to commit or conceal the charged offense. The guideline already has been applied in a manner which fits this test. In most cases, courts emphasized special access to valuable items [10] or information [11], or special authority over people or valuable items [12] in deciding that the defendants before them held positions of trust. When the defendants used this access or authority to commit a crime or avoid detection of a crime, the courts found the guideline two level increase to be appropriate. Still, the analysis forced by the ordinary bank teller exclusion in the commentary makes the determination more difficult and controversial than it should be.

The bank teller example obscures rather than enlightens the proper application of the guideline. This Court accepts the United States Attorney's suggestion that the commentary is in conflict with the plain meaning of the adopted guideline and therefore should be disregarded.[13]

This Court is not the first one to disagree with the bank teller example.[14] Many courts have struggled to distinguish the bank teller because of the guideline commentary.[15] Some presume that embezzlement necessarily involves an abuse of trust and therefore the application of the guideline to an embezzling bank teller would be double-counting.[16] Others find that an ordinary bank teller is not in a position of trust. Several dissenting opinions are based on the lack of satisfactory or meaningful distinction between bank tellers and the defendant.[17] The effect of the ordinary

position of trust). *Cf. United States v. Ruiz,* 905 F.2d 499 (1st Cir.1990) (police officer abused his position of trust to facilitate commission and concealment of drug crime).

**9.** The valuable entity can be tangible or intangible, may be a person, and may include the right to do or refuse to do something.

**10.** *United States v. Ajiboye,* 961 F.2d 892, (9th Cir.1992) (undelivered mail); *United States v. Lange,* 918 F.2d 707 (8th Cir.1990) (express and certified mail); *United States v. Hill,* 915 F.2d 502 (9th Cir.1990) (household belongings).

**11.** *United States v. Castagnet,* 936 F.2d 57 (2nd Cir.1991) (code access to airline computer system); *United States v. Ehrlich,* 902 F.2d 327 (5th Cir.1990) (knowledge of and access to bank electronic data system).

**12.** *United States v. Zamarripa,* 905 F.2d 337 (10th Cir.1990) (babysitter); *United States v. McMillen,* 917 F.2d 773 (3rd Cir.1990) (savings and loan branch manager).

**13.** The Seventh Circuit has already held that, while the commentary should be given weight in applying the guidelines, *United States v. De-Cicco,* 899 F.2d 1531 (7th Cir.1990) (considering § 3B1.1), the text takes precedence in the event of conflict. *United States v. Pinto,* 875 F.2d 143 (7th Cir.1989) (considering § 4B1.1). The Ninth Circuit, sitting *en banc,* agrees. *United States v. Anderson,* 942 F.2d 606 (9th Cir.1991) (considering § 3B1.1).

**14.** *See United States v. Brown,* 941 F.2d 1300, 1305 n. 6 (5th Cir.1991); *United States v. Drabeck,* 905 F.2d 1304, 1306 (9th Cir.1990) ("[W]e

are somewhat at a loss to understand why the Sentencing Commission believes that an ordinary bank teller who embezzles should not receive the enhancement.").

**15.** *United States v. Milligan,* 958 F.2d 345, 347 (11th Cir.1992) (difficult but possible to distinguish the ordinary bank teller).

**16.** *See United States v. Jimenez,* 897 F.2d 286, 287 (7th Cir.1990) (in dicta, the court uses § 3B1.3 and commentary as one example of an explicit exception, which it interprets as "enhancement for abuse of trust not applicable to embezzlement"). Courts have applied the abuse of trust guideline in embezzlement cases, however. *See, e.g., United States v. Ehrlich,* 902 F.2d 327 (5th Cir.1990). One court pointed out that the Sentencing Commission did not preclude the application of § 3B1.3 from embezzlement cases, and that the example of "ordinary bank teller" would be superfluous if the exclusion were intended to cover all embezzlement. *United States v. Drabeck,* 905 F.2d 1304, 1306 (9th Cir.1990).

**17.** *United States v. McMillen,* 917 F.2d 773, 777 (3rd Cir.1990) (Pollak, J., dissenting) (record unclear if a teller at the same institution "could have embarked upon a reasonably similar scheme of embezzling the funds and covering it up"); *United States v. Lange,* 918 F.2d 707, 710 (8th Cir.1990) (Heaney, J., dissenting) (postal worker who handled certified mail not different from bank teller); *United States v. Castagnet,* 936 F.2d 57, 63 (2nd Cir.1991) (Altimari, J., dissenting) (junior ticket agent in same position as bank teller).

bank teller example in the commentary has been to confound the plain meaning of the guideline and distort the analysis of courts applying it.

The *Hill* principle and related indicia remain helpful measures but, because they stem from an accommodation of the bank teller exclusion in the commentary, they exclude some defendants who fit within the guideline. There is no good basis on which to exclude the ordinary bank teller who embezzles from one who abuses a position of trust in a manner that facilitates the commission or concealment of the offense. Judge Shadur in *United States v. Arrington,* 765 F.Supp. 945 (N.D.Ill.1991) persuasively challenges the assumptions behind the *Hill* standards. Ordinary bank tellers can and do embezzle funds, evading detection commensurate with their creativity, their computer skills and the bank's detection sophistication and effort. Bank tellers are not easy to observe by their supervisors, can make computerized financial arrangements which release funds to them without actually grabbing cash from the drawer, and can juggle numbers to evade detection during daily audits.[18]

Judge Shadur changes the focus from difficult-to-detect wrong to low level employment.[19] However, this distinction is not persuasive.[20] First, it assumes that positions of trust are also positions of responsibility, skill, education, or experience.[21] In many positions, these attributes go hand in hand—bank branch manager, chief financial officer, judge—while other jobs require trustworthiness without the other implications. One of the best examples is postal employees who routinely sort, process and deliver mail. These jobs depend on the honesty of the employee despite being lower level, relatively unskilled positions. Second, the guideline simply does not require any special level of responsibility or seniority. The sentencing commission never distinguished managerial or supervisory positions, even though it easily could have. The teller example is tossed out without distinguishing features linked to it—the Ninth Circuit's guess is as good as Judge Shadur's as to why an ordinary bank teller avoids the adjustment despite fitting within the explicit text of the guideline.

It is the access to or authority over valuable things which puts defendants in positions of trust. Defendants who use that access or authority to commit or conceal crimes abuse the position of trust that they hold. The guideline should be used to increase the offense level of those defendants. The two level increase under Sen-

---

**18.** In addition, ordinary bank tellers do not fit the "all other persons" test used to determine whether the abuse facilitated the offense. Some courts have found that, since the tellers are not in a position of trust, the facilitation question does not need to be addressed. Because I agree with Judge Shadur that the bank teller example fails the *Hill* test for position of trust—easy to audit, easy to observe—and because an embezzling bank teller fails the test I describe for a position of trust, I do reach the facilitation question. Quite clearly, an ordinary bank teller is in a superior position to embezzle funds and commit other financial crimes because of his job than all other persons, *i.e.,* any member of the public who would like to steal money. Arguably, the teller has an equal or superior position even compared to other bank employees, which is not the standard level of comparison used by courts. *See, e.g., U.S. v. Hill, supra* (compared to general public, not other truck drivers); *U.S. v. Brown, supra* (compared to general public, not other prison employees).

**19.** The defendant in *United States v. Drabeck,* 905 F.2d 1304, 1305 (9th Cir.1990) offered that theory to a less sympathetic audience a year earlier. Drabeck argued that the guideline is not intended to apply to anyone lower on the "'hierarchy of fiduciary responsibility' than an ordinary bank teller", *id.,* and as a janitor he was lower than the teller. The court rejected this view, and held that his lack of supervision and access to the bank's assets distinguished him from the teller exception.

**20.** As a member of the Sentencing Council, I originally was persuaded by Judge Shadur's thoughtful analysis. Now I believe the guideline and the commentary are in irreconcilable conflict and that the low level employee distinction is unsupported by the guideline as adopted.

**21.** Other judges have linked the teller exclusion to similar criteria not necessarily encompassed by trust. *See, e.g., United States v. Castagnet,* 936 F.2d 57, 63 (2nd Cir.1991) (Altimari, J., dissenting) (junior ticket agent not "endowed with more trust *or responsibility* than an ordinary bank teller.") (emphasis added).

tencing Guideline 3B1.3, for abuse of position of trust, should be applied to this defendant.