# UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 99-11138

(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MITCHELL SCOTT GASSIOT,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas
USDC No. 5:99-CR-20-C

April 18, 2000

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Mitchell Scott Gassiot appeals the sentence arising from his guilty plea to embezzlement of bank funds in violation of 18 U.S.C. § 656. For the reasons set forth below, we affirm the sentence of the district court.

Gassiot pled guilty pursuant to a plea agreement to the embezzlement of funds from the Snyder National Bank (the "bank") and criminal forfeiture. As part of the plea agreement, Gassiot stipulated that the factual resume supporting his plea was true and correct. The resume stated that,

   [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

beginning in 1994, while employed at the bank as a vice-president and cashier, Gassiot began removing cash from the main vault of the bank, generally in amounts of $1,000. Gassiot also removed mutilated bills that were in poor condition but still usable as currency. Between January 1, 1994 and March 8, 1999, Gassiot embezzled a total of $427,689.50 from the bank.

The resume further provided that while employed at the bank, Gassiot was responsible for balancing the vault and for counting the cash in the vault. Bank president and CEO Joe Jackson also testified that Gassiot was in charge of internal controls of cash, tellers, and the vault. When independent auditors—acting under Gassiot's supervision—would audit the vault at the bank, they would only operate off of the reports that Gassiot had prepared.[1]

In calculating Gassiot's offense level, the probation officer preparing the presentence report ("PSR") recommended a two-level upward adjustment under U.S.S.G. § 3B1.3 based upon Gassiot's abusing his position of trust to commit the embezzling offense. Gassiot filed an objection to the recommended adjustment in which he acknowledged that he had held a position of trust at the bank but argued that he had not used this position to facilitate the commission of the crime. The district court overruled Gassiot's objection to the PSR, finding that Gassiot's supervisory position at the bank was a position of trust and that he had abused that position to facilitate and conceal the commission of the offense for five years.

On appeal, Gassiot argues that the district court erred in applying a two-point upward adjustment in his offense level pursuant to U.S.S.G. § 3B1.3. More specifically, he contends that the

---

[1] Gassiot's plea agreement also contained a paragraph entitled "Waiver of Right to Appeal" which stated that "[e]xcept as otherwise provided, the defendant hereby expressly waives the right to appeal his conviction and/or sentence on any ground . . . The defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of a statutory maximum; (b) any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court, and an improper computation of the applicable guideline range . . . ." While is clear that a defendant may, as part of a valid plea agreement, waive his statutory right to appeal his sentence, in order to be valid, the waiver must be an informed one. *see United States v. Melancon*, 972 F.2d 566, 568 (5th Cir. 1992). It is unclear whether Gassiot was specifically admonished that he was waiving his right to appeal during the plea colloquy. However, since neither party raises the issue of whether Gassiot knowingly waived his right to appeal his sentence in the plea agreement, and because we do not need to resolve this issue in order to decide this case, we will not discuss the potential waiver issue here.

district court erred in finding (1) that he occupied a position of trust at the bank, and, more significantly, (2) that Gassiot's position significantly facilitated his embezzlement. We review the district court's application of § 3B1.3 to the facts for clear error. *See United States v. Smith*, __ F.3d __, 2000 WL 1162408, at *9 (5th Cir. Feb. 14, 2000); *United States v. Iloani*, 143 F.3d 921, 922 (5th Cir. 1998).[2]

Section 3B1.3 provides for a two level enhancement if the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Thus, an abuse-of-trust enhancement was appropriate if Gassiot (1) held a position of trust at the bank, and (2) used that position of trust to facilitate significantly the commission or concealment of the embezzlement of funds from the bank. *See Iloani*, 143 F.3d at 922. Here, both the factual resume and the evidence presented at Gassiot's sentencing hearing support the district court's findings that both of these prerequisites were satisfied.

"'Public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion . . . Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. §3B1.3, commentary (n.1). A person in a position of trust can be distinguished from one who is not by "the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *United States v. Brown*, 7 F.3d 1155, 1161 (5th Cir. 1993) (citing *United States v. Hill*, 915 F.2d 502, 506 (9th Cir. 1990)); *see also Iloani*, 143 F.3d at 922 ("A position of trust is characterized by substantial discretionary judgment that is ordinarily given considerable deference.") (internal quotations omitted). Gassiot's argument that he was not acting in his capacity as a bank

---

[2] On appeal, Gassiot contends that our prior "enunciation of the appropriate standard of review is unclear." Accordingly, he suggests that we "harmonize our differing pronouncements" and (1) review *de novo* what constitutes a "position of public or private trust," and (2) review for clear error whether a defendant occupied a position of trust and/or whether that position of trust facilitate the commission or concealment of Gassiot's offense. However, Gassiot conceded in his objections to the PSR that he held a position of trust at the bank. Similarly, on appeal, he focuses his argument on the premise that his position did not facilitate the commission or concealment of his offense. Therefore, the issue of the proper standard of review for determining whether a particular position is one of public or private trust need not be determined in order to resolve this appeal.

officer when he embezzled funds from the bank is unpersuasive in light of the facts presented in the PSR and the factual summary. The evidence presented here reflects that Gassiot, without supervision, conducted a daily count of cash in the vault and prepared written ledgers of the amount of cash on hand. Independent auditors and bank employees did not physically count the cash in the vault largely because they relied upon Gassiot's representations of the amount of money in the vault. This evidence clearly demonstrates that Gassiot was not acting as a "mere bank teller" when he embezzled bank funds. *Cf. United States v. Ehrlich*, 902 F.2d 327, 331 (5th Cir. 1990) (finding that "[p]erhaps any number of [bank] employees could have obtained and executed the same instruments, debit and credit slips, and then routed them to EDS for processing, but Ehrlich's position of trust gave her specialized knowledge of the EDS system, as well as information about non-reconciled [bank] accounts, that few other employees shared").

Gassiot further contends that, even if he did occupy a position of trust at the bank, his position did not significantly facilitate the commission of concealment of the offense because other employees at the bank had the same opportunities to embezzle funds that Gassiot had. *See Iloani*, 143 F.3d at 923 ("The position of public trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons."). In fact, the evidence presented supports the district court's finding that Gassiot used his position both to facilitate and to conceal his embezzlement of funds. Specifically, Gassiot was able to provide false reports to the independent auditors and draft false ledger sheets that hid his activities largely because he knew that, because of his managerial position, no one was checking over his daily computations of cash on hand. *Cf. Ehrlich*, 902 F.2d at 331 ("More importantly, Ehrlich's position gave her the authority to routinely initiate loan balancing transactions, which facilitated her embezzlements. Ehrlich was given the authority to balance the loan suspense account, which she debited to effect three of the six embezzlements.").

In sum, we cannot find that, under the facts of this case, the district court clearly erred in applying the abuse of trust enhancement to Gassiot's sentence. Accordingly, we AFFIRM the

sentence of the district court.