EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part:
Although I concur with the majority’s holdings affirming the conviction and upholding the calculation of the loss and restitution amounts, I respectfully dissent from the holding that the district court clearly erred in applying a two-level sentencing enhancement under USSG § 3B1.3 for abuse of a position of trust. As we have held, a “district court’s application of § 3B1.3 is a sophisticated factual determination that will be affirmed unless clearly erroneous.” United States v. Ehrlich, 902 F.2d 327, 330 (5th Cir.1990). Accordingly, we must not substitute our views for those of the district court, and must affirm if *170 there is sufficient evidence to indicate that the defendant maintained a position of private trust and abused that position in a manner that significantly facilitated the commission of the offense. See id. Because the record indicates that there was sufficient evidence to support the district court’s conclusion, I would affirm the application of the two-level enhancement.
The district court did not clearly err in finding that Ollison occupied a position of trust. As the majority notes, “[t]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong.” See United States v. Brown, 7 F.3d 1155, 1161 (5th Cir.1993).[1] As a secretary to the Superintendent of the Dallas Independent School District (“DISD”), Ol-lison was given substantial autonomy to make purchases using her P-Card on behalf of the office. The majority is correct that DISD policies limited her authority to make purchases to certain office-related items, but on this record the autonomy that she had to make whatever purchases she pleased was significant. Unlike many other DISD employees, Ollison was issued a P-card that enabled significant and supervision-free spending. Further, Ollison was charged with the authority to review and reconcile her own bank statements from the P-card, indicating that she was trusted to self-police her own purchases. That DISD policies limited her authorized purchases to arguably minor items does not change the fact that the P-card itself and the limited oversight of her spending decisions allowed her to exercise substantial discretionary judgment. Overall, Olli-son was entrusted with the freedom to exercise judgment when using the P-card, and her wrongful actions proved difficult to detect because of this freedom. See id.
Moreover, the district court did not clearly err in concluding that Ollison used her position of trust to significantly facilitate the commission or concealment of the offense. She abused the fact that she was afforded very little oversight in using the P-card, which allowed her to make unauthorized purchases in the amount of $64,633. As stated in the Presentence Report, Ollison was able to evade detection because she was responsible for maintaining receipts for all purchases and for reviewing and reconciling the bank statements after the P-Card purchases were made.[2] Regardless of the majority’s assertions that Ollison could have been detected sooner and that her efforts at concealment were “amateurish,” the fact remains that her self-policing duties and freedom from oversight facilitated her ability to purchase the personal items without detection. Again, there is sufficient evidence to support the district court’s conclusion that Ollison’s position significantly facilitated her crime, and we *171 must not substitute our own interpretation of the facts for that of the district court.
Ollison’s discretion in using her P-Card also distinguishes her from the situations explicitly excluded by § 3B1.3. The Commentary to § 3B1.3 clarifies the definition of “public or private trust”:
This adjustment, for example, applies in the case of an embezzlement of a client’s funds by an attorney serving as a guardian, a bank executive’s fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.
Unlike the ordinary bank teller or hotel clerk, Ollison was entrusted with the responsibility of using her P-Card to make necessary purchases- — -a responsibility that was not given to every employee of the DISD. The bank teller in the above example and the office manager in United States v. Tann cited by the majority were not given the authority to take money or forge checks in some situations but not others. See 532 F.3d 868, 870-71. Although in these cases the offenders had the capability and the access necessary to commit theft, the reason that they were not in a position of trust is that they did not have the freedom to exercise any judgment as to when the action constituted theft and when it did not. Here, Ollison could exercise judgment as to whether or not a purchase was necessary for the Superintendent. She had the freedom to make the purchase without supervision, and the purchase was only illegal if it was not for the Superintendent and she failed to reimburse the money. In the above examples, the bank teller pocketing money and the office employee forging checks was illegal in all circumstances regardless of the individual’s judgment.
Ollison’s situation is unique compared to other examples from the Sentencing Guidelines and our case law. As the majority notes, the proper inquiry under § 3B1.3 is whether the defendant’s position affords him or her an opportunity not enjoyed by the general public. United States v. Powers, 168 F.3d 741, 752 (5th Cir.1999). As a P-Card holder who was able to charge to the government tens of thousands of dollars in purchases, both authorized and unauthorized, Ollison quite clearly had access to an opportunity not available to the general public. Further, she was entrusted by the Superintendent, DISD, and the United. States government to use her judgment regarding what purchases were necessary for the Superintendent’s office and she was afforded wide latitude to spend large amounts of money ostensibly to those ends.
In conclusion, under the deferential review we apply to the “sophisticated factual determination” made below I do not find that the district court clearly erred in enhancing Ollison’s sentence for abuse of a position of trust. Although a de novo review might reach a different conclusion, the district court’s judgment is not unsupported by the record. Accordingly, I concur in the first parts of the opinion, but dissent from Part 11(F)(2).

. The majority also relies on language from various other Circuits interpreting § 3B1.3 that we have not adopted. Rather than focusing (as other Circuits do) on the complexity of the employee’s duties or the governability of these duties through established protocol, our cases focus on the level of power and freedom an employee has that might be abused and how this power compares to that possessed by the general public. See, e.g., Brown, 7 F.3d at 1161; United States v. Dial, 542 F.3d 1059, 1060 (5th Cir.2008); United States v. Powers, 168 F.3d 741, 752 (5th Cir.1999); United States v. Brown, 941 F.2d 1300, 1305 (5th Cir.1991); Ehrlich, 902 F.2d at 331. Olli-son’s situation is properly analyzed according to our interpretation of § 3B1.3 rather than the jurisprudence of other Circuits.

. A crime resulting from lax supervision will not always support the application of the § 3B1.3 enhancement; however, in this case the record supports the finding that Ollison maintained enough freedom from supervision to facilitate the commission of the offense.