**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Charles L. LAMB, Defendant–Appellee.**

No. 92–2846.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1993.

Decided Aug. 27, 1993.

Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, Scott A. Verseman, Rockford, IL, for U.S.

Terry L. Deck, Rockford, IL, for defendant-appellee.

Before BAUER, Chief Judge, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Charles Lamb, a letter carrier for the United States Postal Service, was charged with and pled guilty to embezzlement of U.S. mail in violation of 18 U.S.C. § 1709. The district court sentenced Lamb to two months of home confinement followed by three years of probation as well as imposing a fine of $1,000 and ordering that he perform fifty hours of community service. The United States government appeals the district court's refusal to increase Lamb's base offense level by two levels for abuse of a position of public trust under the United States Sentencing Guidelines § 3B1.3. We reverse and remand.

## I. *BACKGROUND*

Defendant Charles Lamb commenced his employment with the United States Postal Service on February 11, 1987, and was assigned as a letter carrier in Rockford, Illinois. His duties included the sorting and delivery of mail given to him by the distribution clerk. Lamb was also responsible for retrieving mail from collection boxes and bringing this mail back to the Post Office for processing.

In early April 1992, postal authorities were informed that thirty-seven opened envelopes and their contents were discovered in a collection box on Lamb's route. On or about that same date, someone stole a master postal key which opened all the collection boxes in Rockford, Illinois. One week later, a Rockford resident returned to the post office 200 pieces of mail, some opened and some unopened, that he found along the railroad tracks. Postal authorities also received twenty-three pieces of mail from two other people who observed it flying out of a postal vehicle (a subsequent investigation revealed

that the vehicle was assigned to the defendant Lamb). Later the same day, a county deputy sheriff returned 300 pieces of mail to the Post Office that he found in a forest preserve. The mail delivery problems on Lamb's route prompted the U.S. Postal Inspection Service to begin an investigation into Charles Lamb.

Postal inspectors, who investigate theft by postal employees, placed two test letters, each containing recorded currency, into the mail for Lamb's assigned route on April 10th, 1992. Each of the test letters had an undeliverable address and U.S. Postal procedure dictates that a letter carrier return all undeliverable mail to the U.S. Post Office. The postal inspectors followed and observed Lamb on April 10th as he delivered the mail on his route and apprehended him immediately after he made purchases in a convenience store with money they had placed in a test letter. After arresting Lamb, they found additional plant money in his wallet. At this time, Lamb confessed to stealing the master key to the city's collection boxes and embezzling mail. Postal authorities estimate that Lamb stole or destroyed approximately 1500 pieces of mail including thirty-seven state and federal tax returns.

After the defendant was charged with one count of embezzlement of mail in violation of 18 U.S.C. § 1709, he entered a plea of guilty. Prior to sentencing, a probation officer prepared the Presentence Investigation Report ("PSR") and recommended against a § 3B1.3 enhancement for abusing a position of trust because he believed a letter carrier was like a "bank teller" which the Guidelines commentary excludes from the "position of trust" enhancement. *See* U.S.S.G. § 3B1.3 comment. (n. 1). At the defendant's sentencing hearing, a postal inspector testified that time and cost constraints prevent the Post Office from keeping a record of each and every piece of First Class Mail that is assigned to an individual letter carrier for delivery on a given day. Furthermore, the postal inspector testified that because of cost constraints

the Post Office does not have a procedure in place that will insure that each and every piece of mail retrieved from collection boxes by letter carriers will be promptly delivered to the Post Office. Despite the postal inspector's testimony suggesting that letter carriers are in a position of trust as they perform their daily duties, the district judge denied the two level enhancement for abusing a position of trust relying instead upon the probation officer's recommendation and *United States v. Arrington*, 765 F.Supp. 945 (N.D.Ill.1991). The government appeals the district court's ruling declining to apply the two-level enhancement for abusing a position of trust.

## II. *DISCUSSION*

The government's appeal requires that we interpret U.S.S.G. § 3B1.3, and the corresponding Application Note 1. Section 3B1.3 instructs the sentencing court to enhance a defendant's sentence two levels when the defendant is in a "position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." Application Note 1 states that "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. The adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." U.S.S.G. § 3B1.3 comment. (n. 1). The Application Note's bank teller example has generated several conflicting circuit court decisions.[1] The government's appeal requires that we review and analyze the various court interpretations of § 3B1.3 and state the law of this circuit.

### A. *Standard of Review*

■ Judicial interpretation of the term "position of trust" is a legal question that we review *de novo*. *United States v. Kosth*, 943 F.2d 798, 800 (7th Cir.1991). Our position in

---

1. *See* e.g., *United States v. Lange*, 918 F.2d 707, 710 (8th Cir.1990) (postal letter carrier abused position of trust when he carried certified and express mail since this kind of mail is especially sensitive and more likely to contain things of value than ordinary mail) *but see, United States v. Milligan*, 958 F.2d 345, 347 (11th Cir.1992) (post office window clerk is in a position of trust within the meaning of the enhancement provision).

*Kosth* has been echoed in several other circuits. *See United States v. Castagnet,* 936 F.2d 57, 58–59 (2nd Cir.1991); *United States v. McMillen,* 917 F.2d 773, 774–75 (3rd Cir. 1990); *United States v. Hill,* 915 F.2d 502, 505 (9th Cir.1990); *but see United States v. Ehrlich,* 902 F.2d 327, 330 (5th Cir.1990) (reviewing for clear error), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991).

### B. *Position of Trust*

The courts have enunciated several tests in an attempt to determine whether a defendant, such as this mail carrier, is in a position of trust within the meaning of U.S.S.G. § 3B1.3. At oral argument the appellant and appellee presented three alternative tests. The government urges this court to adopt the standard established in *United States v. Odoms,* 801 F.Supp. 59 (N.D.Ill.1992). In the alternative, they suggest that if we reject the *Odoms* standard, we should apply the *United States v. Hill* test. 915 F.2d 502 (9th Cir.1990). The defendant-appellee in turn proposes adoption of a standard announced in *United States v. Arrington,* 765 F.Supp. 945 (N.D.Ill.1991).[2]

### 1. *The* Arrington *standard*

In *Arrington,* the district court refused to apply a § 3B1.3 enhancement for abuse of a position of public trust to a casual mail handler because "his access to mail that might contain things of value was no different from that of thousands of postal workers." *Arrington,* 765 F.Supp. at 947. The court based its holding on two sections of the Sentencing Guidelines: the Application Note to § 3B1.3 (the bank teller example) and § 2B1.1(b)(4) which increases the offense level if the theft involved undelivered mail. *Arrington* held that postal clerks should be excluded from the position of trust sentencing enhancement because there is nothing "to support the notion that the low-level postal employee who is given no *special* position of trust should be subjected to anything other than the straightforward application of

Guideline 2B1.1, without a two-level increase under Guideline § 3B1.3." *Arrington,* 765 F.Supp. at 948 (footnote omitted). The court concluded that ordinary postal workers are indistinguishable from bank tellers and are therefore exempt from the § 3B1.3 sentence enhancement. *Id.* at 949.

In *Arrington,* the court also found support for its holding in the fact that the Sentencing Commission chose to punish mail theft by postal employees (in violation of 18 U.S.C. § 1709) and mail theft by any other person (in violation of 18 U.S.C. § 1708) under Sentencing Guideline § 2B1.1 without creating a greater penalty for theft by a postal employee. In rejecting the two-level enhancement for abusing a position of trust whenever a postal employee is convicted of mail theft, the court stated, "[i]t is impossible to conclude that the Sentencing Commission equated all postal service employees with the 'public trust' within the meaning of § 3B1.3." *Id.* at 948. We recently rejected this argument in dicta, stating

> "For example, all postal carriers who steal mail might be thought to have abused a position of trust (§ 3B1.3), because § 2B1.1 lumps together base offense level 4 forms of theft that do with forms of theft that do not involve an abuse of a position of trust. Since nothing in the guideline itself adjusts for this aggravating factor, postal carriers who steal mail would be under-punished if the adjustment for abuse of trust were confined to cases in which the defendant was more culpable than others who had committed the same *crime,* as distinct from others who had committed offenses with the same *guideline.*"

*United States v. Lallemand,* 989 F.2d 936, 939 (7th Cir.1993).

The defendant, relying on *Arrington,* claims that he was a "low-level employee" (similar to the bank teller in the Application Note) and thus, he argues, the district court properly denied the two-level enhancement for abusing a position of trust. We disagree for we are of the opinion that *Arrington* places far too much emphasis on the com-

---

**2.** We note that the sentencing of defendant Lamb took place two months before *Odoms* was decided. This fact may have led Judge Reinhard to sentence Lamb under *Arrington* while still indicating the need for "some guidance (from the Seventh Circuit) on this subject."

mentary to the neglect of the Guideline § 3B1.3. *Arrington*'s "low-level employee" exception bars a court from enhancing a defendant's sentence whose crime was facilitated or made possible because of his employment position. It would be contrary to logic and common sense to hold that just because a person has a "low-level" job, he cannot be considered to occupy a position of trust. For example, one must agree that police patrolmen, firemen, probation officers, and game wardens, although they may be at the lower end of their respective departmental organizational charts, occupy positions of trust. Regardless of where any of these governmental officers fit into their departmental organizations, they are without a doubt in positions of trust and if they use that position of trust to facilitate or conceal a crime they should receive the two level sentence-enhancement. *See United States v. Gould*, 983 F.2d 92, 94 (7th Cir.1993) (police officer); *United States v. Claymore*, 978 F.2d 421, 423 (8th Cir.1992) (tribal police officer); *United States v. Brown*, 941 F.2d 1300, 1305 (5th Cir.) (correctional officer), *cert. denied*, ⸺ U.S. ⸺, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); *United States v. Foreman*, 926 F.2d 792, 796 (9th Cir.1990) ("[P]olice officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with enforcing.").

■ In *United States v. Brann*, 990 F.2d 98 (3d Cir.1993), a defendant opposed the application of the two-level enhancement for abusing a position of trust because he was "a low level Strike Force Agent with no supervisory responsibility." The Third Circuit rejected the "low-level employee" argument because the defendant "utilized his position ... to facilitate the commission and concealment of his offense." *Id.* at 103. The court emphasized the "nexus between the position of trust" and the "commission and concealment of the offense." *Id.* We, too, reject the "low-level employee" analysis because that analysis adds a factor to the Guideline (spe-

cial level of responsibility or seniority) that is without basis in the plain language of the Guideline. Merely looking at where an employee fits into a hierarchical structure is a far too simplistic approach to determining whether a defendant occupies a position of trust. We are of the opinion that the pertinent question is not the employee's level of seniority or responsibility, but whether the employee's position provided access to items of value, *Odoms*, 801 F.Supp. at 63, or the employee was a sworn public servant engaged in the performance of public duties. *See infra* at 421.

### 2. *The* Hill *Standard*

In *United States v. Hill*, 915 F.2d 502 (9th Cir.1990), the Ninth Circuit attempted to reconcile the language of § 3B1.3 with the bank teller exception. The court developed a standard that compared an individual's access to valuable items not with co-workers but rather with the public at large. The court gleaned from the bank teller example the principle that the primary trait of a person in a position of trust is the extent of "freedom to commit a difficult-to-detect wrong." *Id.* at 506. "One indicium of such freedom ... is the ability of the trustor objectively and expediently to determine the trustee's honesty.... A second indicium of freedom to commit a difficult-to-detect wrong is the ease with which the trustee's activities can be observed." *Id.*[3] *Hill* explained the bank teller exception by concluding that neither of these indicia (ability to detect dishonesty in employees and ability to supervise employees) are met in the context of a bank teller. Regarding detection of a bank teller's dishonesty, the Ninth Circuit concluded that there is an objective means of determining embezzlement through balancing the teller's till. As for surveillance of tellers, the court found that surveillance is relatively easy since the teller is normally positioned at a fixed place in plain view of superiors. *Id.* at 505.

■ While we agree with the Ninth Circuit that one characteristic of a position of trust is the "freedom to commit a difficult-to-

---

3. The Ninth Circuit later applied the *Hill* standard specifically to postal workers in *United States v. Ajiboye*, 961 F.2d 892 (9th Cir.1992) and

held that letter carriers occupy a position of trust because they are free from surveillance.

detect wrong," we are not persuaded that this standard distinguishes bank tellers from other employees who do not occupy a position of trust. Although bank tellers may be called upon to account for the cash in their drawers at any time of the day, this form of oversight might be inadequate to detect a more elaborate embezzlement scheme in which a teller attempts to access and transfer funds by computer that never enter a till. "Ordinary bank tellers can and do embezzle funds, evading detection commensurate with their creativity, their computer skills and the bank's detection sophistication and effort." *Odoms*, 801 F.Supp. at 64. Thus we are of the opinion that bank tellers are in a position of trust and any attempt to provide a standard for district courts to distinguish bank tellers from other lower echelon employees would result in far too much confusion.

### 3. *The* Odoms *standard*

In *United States v. Odoms*, 801 F.Supp. 59 (N.D.Ill.1992), the district court held that a postal worker entrusted with affixing forwarding address labels was subject to the § 3B1.3 sentence increase for abusing a position of public trust because the postal employee 1) had access or authority to handle valuable items; and 2) his access or authority increased his ability to commit or conceal the offense. *Id.* at 63.

Most notable in the *Odoms* opinion is its rejection of the bank teller example as contradictory of the Guideline. *Odoms* acknowledged the dissatisfaction many courts have expressed with the bank teller example,[4] and concluded that "[t]he effect of the ordinary bank teller example in the commentary is to confound the plain meaning of the guideline and distort the analysis of the court's applying it." *Id.* at 63–64. *Odoms* held that "[i]t is the access or authority over valuable things which puts defendants in positions of trust.... The guideline should be used to increase the level for those defendants." *Id.*

■ We are in agreement with the court's statement in *Odoms* that the commentary and the Guideline are in conflict, accordingly we are not bound by the commentary as the United States Supreme Court has recently held that the commentary in the Guidelines is binding on the federal courts unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline. *Stinson v. United States*, —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). *Stinson* is in keeping with previous Seventh Circuit decisions holding that when the Guidelines and the commentary conflict, the Guideline prevails. *See, e.g., United States v. Woods*, 976 F.2d 1096, 1102 (7th Cir.1992).

■ Rather than providing guidance to the courts, the bank teller example has produced an undesirable amount of confusion. The result has been that courts have jumped over hurdles to contort their analysis of the Guideline in order that they might ultimately place defendants inside or outside the rubric of the bank teller exception. The instant case clearly reveals the unworkable nature of the bank teller example. Defendant Lamb engaged in employment in which he was entrusted with valuable U.S. mail and during the time in which he handled mail he acted on his own with little or no supervision. To deny a two-level enhancement for behavior clearly contemplated under § 3B1.3 renders the Guideline useless. The plain language of the Guideline states that the two-level enhancement applies "if the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The Application Note adds: "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons...." *Id.* § 3B1.3 comment. (n. 1). "By its terms, section 3B1.3 presents two issues: (1) whether the defendant occupies a position

---

**4.** *See, e.g., United States v. Brown*, 941 F.2d 1300, 1305 n. 6 (5th Cir.1991); *United States v. Castagnet*, 936 F.2d 57, 61 (2nd Cir.1991) ("we are somewhat at a loss to understand why the sentencing commission believes that an ordinary

bank teller who embezzles should not receive the enhancement") (quoting *United States v. Drabeck*, 905 F.2d 1304, 1306, *reh'g granted*, 915 F.2d 1404 (1990), *aff'd*, 944 F.2d 910 *redesignated*, 946 F.2d 629 (9th Cir.1991)).

of trust, and (2) whether the defendant abused his position in a manner that significantly facilitated the commission or concealment of the offense." *Gould*, 983 F.2d at 94. We are in agreement with the court's opinion in *Odoms*, as far as it goes, that a position of trust is characterized by "access or authority over valuable things," *Odoms*, 801 F.Supp. at 64. The testimony in the case before us demonstrates that Lamb as a postal letter carrier had access to mail that was quite valuable including cash, social security checks, as well as federal and state tax returns. Lamb's access to that mail was a direct result of his position, thus under *Odoms* Lamb occupies a position of trust.

▪ Lamb's offense in this case, however, was greater than embezzlement. Above all, he violated his duty as a sworn public servant to carry out the tasks entrusted to him while performing a governmental function for a public purpose.[5] The Ninth Circuit discussed this violation of public trust in *Foreman*, stating

"police officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with enforcing. [The defendant] took advantage of that trust to make it easier for her to conceal criminal activity. We believe that this is precisely the type of situation contemplated by § 3B1.3 as an abuse of position of public trust."

*Foreman*, 926 F.2d at 796. "The postal worker is no less of a public servant than the police officer. In both cases, precisely because the employees are public servants, the government has both a general interest in projecting a positive public image and a specific interest in assuring efficient use of public resources." Edward S. Adams, *Random Drug Testing of Government Employees: A Constitutional Procedure*, 54 U.Chi.L.Rev. 1335, 1352 (1987).[6] In the same vein, the then President Lyndon Johnson issued an Executive Order directing that all federal "employees avoid any action . . . which might result in, or create the appearance of—. . . affecting adversely the confidence of the public in the integrity of the Government." Exec. Order No. 11222, 30 Fed.Reg. 6469 (May 8, 1965), *reprinted in* 18 U.S.C.A. § 201 note at 274–75. Based on the facts in the case before us, we conclude that a government employee who takes an oath to uphold the law (as does a mail carrier) and who performs a government function for a public purpose such as delivery of the U.S. mail, is in a position of trust.

Having determined that Lamb was in a position of trust, the second inquiry is whether he used that position to commit or conceal his crime. It is rather obvious that Lamb injured the individuals whose property (mail) he stole or destroyed and that he was only able to effectuate his crime because of his position with the Postal Service, thus we hold that the two-level enhancement for abuse of a position of trust applies to Lamb because he occupied a position of trust and used that position to significantly facilitate the crime of embezzling U.S. mail.[7]

---

5. Before entering upon their duties and before receiving any salary, all officers and employees of the Postal Service shall take and subscribe the following oath or affirmation:
   "I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter."
   39 U.S.C. § 1011 (1988).

6. At the local level, in a civil rights case in which a disgruntled employee sued a municipal government for violating the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, we expressed a similar belief concerning the duty of public employees:
   "officials of any local governmental entity who are responsible for the provision of basic services like police and fire protection as well as 'quasi-utility functions' like water, garbage, and sewage services, *occupy crucial positions of trust and accountability*."
   *Heck v. City of Freeport*, 985 F.2d 305, 309 (7th Cir.1993) (emphasis added).

7. The Circuit Court of Appeals for the District of Columbia recently interpreted § 3B1.3 in *United States v. Smaw*, 993 F.2d 902 (D.C.Cir.1993), and cited a proposed amendment to the § 3B1.3 application note as support for its refusal to enhance the sentence of an FTC secretary who used her access to FTC documents to fraudulently obtain credit cards in the names of fellow em-

### III. CONCLUSION

For the reasons stated above, we reverse and remand to the district court with directions to resentence the defendant Lamb in accordance with this opinion.

REVERSED.

ployees. *Id.* at 906. The D.C. Circuit's reliance on the proposed amendment appears to have been premature because the final amendment that the Sentencing Commission submitted to Congress contains language vastly different from that of the proposed amendment. (Unless Congress disapproves of or modifies the amendments submitted by the Sentencing Commission, they will take effect on November 1, 1993. 28 U.S.C. § 994(p); 58 Fed.Reg. 27147, 27148 (May 6, 1993)). The final amended Application Note to U.S.S.G. § 3B1.3 reads:

"1. 'Public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above described factors.

*Notwithstanding the preceding paragraph, because of the special nature of the United States mail an adjustment for an abuse of a position of trust will apply to any employee of the U.S. Postal Service who engages in the theft or destruction of undelivered United States mail."* 58 Fed.Reg. 27160. While we do not rely on the final amendment to reach our verdict today, we cite it to distinguish the D.C. Circuit's opinion in *Smaw* from the result we reach today.