**UNITED STATES of America**

v.

**Ralph C.T. FRANKLIN.**

No. 93 Cr 263.

United States District Court,
N.D. Illinois, E.D.

Nov. 4, 1993.

Patrick Brian Murray, Asst. U.S. Atty., Chicago, IL, for plaintiff.

Mark Hellner, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

On July 16, 1993, defendant Ralph C.T. Franklin pled guilty to one count of obstruction of justice in violation of 18 U.S.C. § 1503. Franklin is to be sentenced on November 19, 1993. This matter is presently before the court on Franklin's objections to the presentence investigation report ("PSI").

Specifically, Franklin objects to the recommended enhancement of his sentence for his alleged use of a special skill in the commission of the crime. Franklin also believes he is entitled to a downward departure of two levels for his attempted assistance in an unrelated criminal investigation. Finally, Franklin urges a further departure of two levels on various equitable grounds. For the reasons stated below, the court denies defendant's objections.

### Background [1]

Since his admission to the Illinois bar in May 1977 through May 1993, Franklin worked as a practicing attorney with law offices in Chicago and later, in Maywood, Illinois. According to Franklin, much of his practice was devoted to assisting poor and minority clients. (Defendant's PSI Brief at 8). Although Franklin was apparently a successful practitioner, as of spring 1991, more than six complaints concerning Franklin's handling of various trust documents and real estate transactions had been filed with the Attorney Registration and Disciplinary Committee for the Illinois Supreme Court.[2]

In April 1991, Franklin met with a new client, Samuel Gibson, to discuss the preparation and filing of a bankruptcy petition on Gibson's behalf. Gibson explained to Franklin that he had certain assets, in particular the proceeds from the recent sale of Gibson's home, which he did not want to lose as a result of the bankruptcy filing. Gibson told Franklin that he maintained some of the proceeds from the sale of his home in a certificate of deposit registered in another person's name and the remainder in a safety deposit box.

Franklin advised his new client that they could shield some of his assets from his creditors by falsely claiming that Gibson had gambled away some of the money from the sale of his home. As part of the plan, Franklin told Gibson to travel to Las Vegas or Atlantic City and obtain hotel room receipts and other documentation to make the story seem more credible. At Franklin's suggestion, Gibson and his wife travelled to Atlantic City and stayed at a hotel there for three days. Upon his return to the Chicago area, Gibson gave Franklin the receipts for the hotel and the rental car Gibson and his wife used while in Atlantic City.

In June 1991, Franklin filed Gibson's fraudulent bankruptcy petition with the U.S. Bankruptcy Court for the Northern District of Illinois. On Schedule B–2 of the petition, under the Personal Property heading, Franklin stated that the debtors, (Gibson and his wife Phyllis Gibson) had no cash reserves. On the "Statement of Financial Affairs for Debtor Not Engaged in Business" schedule, Franklin further stated that Gibson had lost approximately $100,000 gambling in Atlantic City. Franklin knew that both of these statements were false.

A month later, Franklin met again with Gibson, this time to prepare him for a Section 341 hearing with his creditors scheduled for the next day. At this point, Gibson was cooperating with the Federal Bureau of Investigation in the agency's investigation into

---

1. Unless otherwise noted, the following summary of the relevant facts of this case is based on the Government's Version of the Offense contained in the PSI. Defendant does not contest the Government's Version of the Offense. (Defendant's Brief in Opposition to PSI at 1).

2. As a result of one of these complaints, Franklin was suspended from the practice of law for a 30–day period beginning June 10, 1993. On June 15, 1993, Franklin moved to have his name stricken from the roll of attorneys authorized to practice law within the State of Illinois. (Defendant's PSI Brief, Exhibits B and C); (PSI at 7).

Franklin's activities.[3] During the meeting, which Gibson taped, Franklin made several incriminating statements. He first advised Gibson that Gibson's creditors were unaware of the money in Gibson's safety deposit box. Franklin then informed Gibson that the bankruptcy petition filed on his behalf did not disclose Gibson's ownership of land in Olympia Fields, Illinois. Finally, Franklin told Gibson to falsely state that he lost approximately $100,000 gambling in Atlantic City and that Gibson and his wife had no cash reserves.

Gibson's Section 341 hearing was held on August 11, 1991. Gibson was subsequently discharged in bankruptcy for having no assets. As noted above, Franklin was charged with, and on July 16, 1993 pled guilty to, one count of obstructing justice in violation of 18 U.S.C. § 1503.

### Application of U.S.S.G. § 3B1.3

Section 3B1.3 of the United States Sentencing Guidelines provides for a sentencing enhancement of two levels if a defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." United States Sentencing Commission, *Guidelines Manual*, § 3B1.3 (Nov.1993). The enhancement does not apply where an abuse of trust or skill is included in the base offense level or specific offense characteristic. *Id.*

The Application Notes for 3B1.3 flesh out the key terms "position of public or private trust" and "special skill". According to the Notes, the position of trust "must have contributed in some substantial way to facilitating the commission or concealment of the offense (*e.g.,* by making the detection of the offense or the defendant's responsibility for the offense more difficult)." *Id.,* comment. (n.1). A "special skill", the Notes explain, refers to skills that usually require "substantial education, training or licensing", skills not normally possessed by the general public. *Id.* comment. (n.2). Examples include skills possessed by pilots, lawyers, doctors, accountants and chemists. *Id. Accord United*

States v. Ashman, 979 F.2d 469, 490 (7th Cir.1992).

Because he allegedly used his special skills as a licensed attorney to significantly facilitate his crime, Franklin was awarded two points under Section 3B1.3. (PSI at 2). The PSI concluded, however, that Franklin does not qualify for the two-level enhancement based on an abuse of a position of trust. *Id.* Franklin objects, arguing that neither rationale warrants enhancement. The government, on the other hand, believes that Franklin qualifies for the two-level enhancement on either ground.

### Use of a Special Skill

■ Franklin opposes the enhancement for use of a special skill on two grounds: 1) no special skills were used in the commission of the crime, and 2) even if such skills were used, they did not significantly facilitate the commission or concealment of the offense. According to Franklin, his advice to his client to lie about gambling losses was a "dumb and unimaginative" ruse that any lay person could have concocted without legal assistance. (Defendant's PSI Brief at 4). This is especially true, he points out, because the preprinted bankruptcy petition forms themselves include a question about gambling losses, a fact that Franklin characterizes as a virtual "invitation" to defraud one's creditors. (*Id.* at 4–5). To find that Franklin used special skills in advising his client how to fraudulently avoid bankruptcy liability under these circumstances, he concludes, would penalize Franklin merely for his status as a lawyer and not for any actual skills he employed.

On October 2, 1993, the court held an evidentiary hearing on this issue. Sandra Rasnak, an Assistant United States Trustee was the only witness. The United States Trustee's office was created in 1979 to act as a watchdog agency, overseeing the work of private bankruptcy trustees and guarding against fraud in the bankruptcy process. Rasnak joined the U.S. Trustee's office in 1985 as a Senior Staff Attorney, primarily

---

**3.** Gibson was arrested on drug trafficking charges on May 16, 1991. He immediately agreed to cooperate with the government in its investigation of Franklin. (Government Sentencing Memorandum at 1–2).

responsible for overseeing the office's fraud monitoring system. During her tenure at the Trustee's office, Rasnak has personally reviewed hundreds of Chapter 7 bankruptcy petitions for fraud.

At the hearing, Rasnak identified Franklin as a "regular" at the bankruptcy court. A February 1993 United States Trustees report (Government Exhibit 2) supports this assertion, listing Franklin as the attorney of record in 29 Chapter 7 bankruptcy cases then pending in the Northern District of Illinois. Having reviewed the Gibson's Chapter 7 bankruptcy petition filed by Franklin, Rasnak testified that she believed Franklin's special expertise as a bankruptcy attorney, especially in Chapter 7 "no assets" cases, allowed him to anticipate safeguards in the U.S. Trustee's detection process and to avoid common pitfalls facing pro se petitioners unfamiliar with the U.S. Trustee's operating procedures. In particular, Rasnak noted that *pro se* petitioners often attempt to fraudulently shield their assets by claiming that they gave the assets away as gifts or that the assets had been lost, stolen, or destroyed. This kind of fraud, according to Rasnak, is far easier for the Trustee's office to detect than are claimed gambling losses, especially when these claimed losses are accompanied by hotel and casino receipts.

Rasnak also observed that the filing of a "no assets" petition further enhanced the scheme's likelihood of success. For "no assets" petitions, unlike other types of petitions, the trustee receives only $45 for her representation of the petitioner's creditors. According to Rasnak, Franklin ensured his client a limited review process by filing a "no assets" petition on his behalf.

Based in part on Rasnak's testimony, but also on the court's review of the briefs and the applicable case law, the court concludes that Franklin used a special skill to significantly facilitate his crime. Although the defendant's plan to defraud his client's creditors was not elaborate, it clearly was enhanced by his special knowledge of the legal process generally, and as a regular before the bankruptcy court, of bankruptcy proceedings in particular. Franklin's familiarity with the constraints on the bankruptcy's court's ability to verify claims made in bankruptcy petitions, unquestionably facilitated the scheme to defraud his client's creditors. Absent such information, Franklin could not have confidently advised his client that all he needed to document his claimed gambling losses were a couple of hotel and car rental receipts. Similarly, he would not have known that his client could claim as much as $100,000 in gambling losses without arousing undue suspicion. Finally, simply by completing other sections of his client's petition in a complete and professional manner, Franklin was able to lend an air of credibility to the petition that *pro se* filings often lack.

Franklin's special knowledge of bankruptcy law and the legal process in general is the direct result of his professional training and his 16 years of experience as a practicing attorney. Franklin used these skills to significantly facilitate his crime. Under Section 3B1.3 of the Sentencing Guidelines, a two-level enhancement of his sentencing level is warranted. *Cf. U.S. v. White,* 972 F.2d 590, 601 (5th Cir.1992) (holding enhancement under § 3B1.3 appropriate where lawyer used knowledge and skills gained as a criminal defense attorney and prosecutor to conceal drug trafficking scheme).

*Abuse of a Position of Trust*

██ Even if Franklin had not used his special skills as an attorney to significantly facilitate his crime, he would qualify for a two level enhancement for abusing a position of public trust. The Seventh Circuit recently addressed the issue of what types of occupations qualify as positions of trust under Section 3B1.3 in *United States v. Lamb,* 6 F.3d 415 (7th Cir.1993). Although the court did not resolve the specific issue of whether and under what circumstances an attorney occupies a position of trust, the opinion is nevertheless instructive.

According to the court in *Lamb,* the court's primary inquiry in determining whether an individual occupies a position of trust should be "whether the employee's position provided access to items of value or the employee was a sworn public servant engaged in the performance of public duties." *Id.* at 419. At issue was whether a letter carrier for the United States postal service

convicted of embezzlement of U.S. mail had abused a position of public trust. The defendant had allegedly stolen or destroyed approximately 1500 pieces of mail including 37 state and federal tax returns. *Id.* at 416. Noting that the defendant had sworn to "uphold the law" and faithfully discharge his duties as a public servant, the court concluded that the defendant had abused his position of public trust through his embezzlement of the U.S. mail. *Id.* at 419. According to the court, the defendant's position was analogous to the position held by police officers found to have violated the very laws they had been charged with enforcing. *Id. citing United States v. Foreman,* 926 F.2d 792, 796 (9th Cir.1990). *Accord United States v. Gould,* 983 F.2d 92, 94 (7th Cir.1993) (assuming that a police officer occupies a position of trust).

Though not a government employee, Franklin, as a licensed attorney, occupied a position of public trust similar to the positions held by the mail carrier in *Lamb* and the police officers in *Foreman* and *Gould. See Illinois Rules of Professional Conduct,* Preamble ("[t]he practice of law is a public trust ... and [l]awyers therefore are responsible for ... defending the integrity of the judicial system against those who would corrupt, abuse or defraud it"). As a member of the Illinois bar, Franklin swore on oath to protect, preserve, and uphold the law. Not merely an advocate, Franklin was an officer of the court, entrusted with preserving the integrity of the judicial process. *See In re Sawyer,* 360 U.S. 622, 668, 79 S.Ct. 1376, 1399, 3 L.Ed.2d 1473 (1959) (Frankfurter, J. dissenting) ("[the lawyer] is an intimate and trusted and essential part of the machinery of justice, an officer of the court in the most compelling sense"). By conspiring to obstruct the very judicial process that he had sworn to defend, Franklin abused his position of public trust in precisely the same manner that a letter carrier who embezzles U.S. mail abuses his position. Moreover, as discussed above, Franklin's abuse of his position of trust significantly facilitated the commission of the crime.

Still, as Franklin correctly notes in his objection to the PSI, the two-level enhancement under this section of the Guidelines does not apply if the "abuse of trust or skill is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3. Franklin errs, however, in asserting that the abuse of a position of trust or the use of special skills are elements of the base offense of obstruction of justice.

18 U.S.C. § 1503 provides: "Whoever corruptly ... endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than 5 years, or both." Thus, under its express terms, the statute applies to *any* individual who attempts to obstruct justice, not just those individuals with special skills or in a position of trust. *Accord United States v. Cintolo,* 818 F.2d 980, 991 (1st Cir.1987) ("[a]cceptable notions of evenhanded justice require that statutes like § 1503 apply to all persons, without preferment or favor."). As the government points out, the broad reach and general applicability of the statute is borne out in the case law. *See United States v. Balzano,* 916 F.2d 1273, 1291 (7th Cir.1990) (use of a threatening hand gesture can constitute obstruction of justice); *United States v. Rovetuso,* 768 F.2d 809, 823 (7th Cir.1985) (attempted murder of a government witness constitutes obstruction of justice); *United States v. Berkowitz,* 712 F.Supp. 707 (N.D.Ill.1989), *rev'd on other grounds,* 927 F.2d 1376 (7th Cir.1991) (theft and destruction of government evidence). Because neither the use of a special skill nor the abuse of a position of trust was an element of his base offense, defendant's objection to the two-level enhancement of his sentence is denied.

### Downward Departure for Attempted Assistance

■ Franklin requests a two-level downward departure in recognition of his attempt to provide the government "with substantial assistance" in the investigation of an unrelated criminal matter. (Defendant's PSI Brief at 6). According to Franklin, he and his lawyer met with two assistant United States attorneys to discuss the possibility of assisting the U.S. Attorney's office in its investigation into alleged criminal conduct in the Village of Maywood. (Defendant's PSI Brief at 6). As a former counsel to the Board of the

Village of Maywood and an acquaintance of several targets of the investigation, Franklin claims he was well situated to assist the government in its investigation. *Id.* Although the government neither accepted his assistance nor asked this court to consider Franklin's offer in its sentencing decision, Franklin believes he is nevertheless entitled to a two-level downward departure for the proffer. *Id.* at 6–7.

Downward departures for providing substantial assistance to authorities are governed by Section 5K1.1 of the United States Sentencing Guidelines. Section 5K1.1 provides in part:

> *Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S.S.G. § 5K1.1 (emphasis added).[4] Here, the government has made no motion for downward departure under Section 5K1.1. Under the clear language of the provision and the law of this circuit, this court need not, and except under the rarest of circumstances, cannot grant the requested departure absent a government motion. *See U.S. v. Brick,* 905 F.2d 1092, 1098–99 (7th Cir. 1990); *U.S. v. Donatiu,* 922 F.2d 1331 (7th Cir.1991). Franklin's motion for downward departure for substantial assistance of authorities is therefore denied.[5]

### *Downward Departure on Equitable Grounds*

 Finally, Franklin urges the court to authorize a two-level downward departure from the sentencing guidelines on various equitable grounds. In particular, defendant notes that as a result of his crime, he has already lost the right to practice his chosen profession, and suffered the "ignomy of adverse publicity" in various professional journals and newspapers. He also asks the court to consider his long involvement in public interest organizations, and his substantial family and community ties. (Defendant's PSI Brief at 7–11).

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guideline if the court finds "that there exists an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *See also* U.S.S.G. § 5K2.0 Grounds for Departure (Policy Statement). Though Franklin's case undoubtedly inspires sympathy,[6] it does not present the kind of "mitigating circumstances" that warrant downward departure. In fact, virtually all of the factors highlighted by defendant are specifically cited by the Sentencing Commission as "not ordinarily relevant in determining whether a sentence should be outside the applicable guidelines range." *See* U.S.S.G. § 5H. Accordingly, Franklin's request for a two-level downward departure on various equitable grounds is denied.

### *Conclusion*

For the foregoing reasons, the court denies defendant's objections to his presentence investigation report. Defendant's adjusted offense level is 12. Having no prior offenses, his criminal history category is I. Thus, under the sentencing guidelines, defendant's sentencing range is 10 to 16 months.

---

4. Section 5K1.1(a) further instructs the court to consider the following factors in determining whether downward departure is appropriate: (1) the "significance and usefulness" of the defendant's assistance; (2) the "truthfulness, completeness, and reliability" of the information provided by the defendant; (3) "the nature and extent" of the assistance; (4) any injury or risk of injury suffered by the defendant or his family as a result of his assistance; and (5) the "timeliness" of the defendant's assistance.

5. Even if this court could entertain the defendant's request for downward departure, no such departure would be appropriate here. Applying the factors set forth in § 5K1.1(a), neither the "significance and usefulness" nor the "nature and extent" of the defendant's assistance would appear to warrant a reduction in defendant's sentence.

6. The court has carefully reviewed the many poignant letters submitted on defendant's behalf.