151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Lisa A. MUNSON, Defendant-Appellant.
 No. 98-1034.
 United States Court of Appeals, Seventh Circuit.
 Argued July 7, 1998.
Decided July 27, 1998.
 
 Appeal from the United States District Court for the Western District of Wisconsin. No. 97-CR-081-S John C. Shabaz, Chief Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JESSE E. ESCHBACH, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Lisa A. Munson pled guilty to embezzling money from the Bank of Poynette, Wisconsin, in violation of 18 U.S.C. § 656. The district court increased Munson's base offense level by two points, pursuant to U.S.S.G. § 3B1.3, because it found that she abused a position of trust that significantly contributed to facilitating the commission or concealment of the embezzlement. The district court sentenced Munson to 15 months' imprisonment. On appeal, Munson argues that the district court improperly relied on outdated precedent in interpreting § 3B1.3 and clearly erred in finding that she occupied a position of trust. We affirm.
 
 I. FACTS
 
 2
 In June of 1994, Munson was hired as a bank teller at the Harmony Grove Branch of the Bank of Poynette, Wisconsin. On June 26, 1995, she was transferred from the branch office to the main bank office in Poynette, where she worked as a teller. On July 8, 1996, Munson was transferred back to a teller position at the Harmony Grove Branch. Although hired as a teller, Munson had additional responsibilities at the Harmony Grove Branch. She was one of only two full-time employees and was assigned the additional tasks of setting up new accounts, bookkeeping, and taking loan applications. Munson also had access to the vault and sometimes counted the vault cash. She sent the paperwork to the main bank daily and was often responsible for preparing the vault cash ticket at the end of the day.
 
 
 3
 Munson embezzled a total of $53,880.31 from the bank by various methods. These methods included withdrawing money from dormant customer accounts, altering cash advance paperwork on a customer's MasterCard account, and taking money from her teller drawer. With respect to embezzling money from her teller drawer, Munson would prepare a "cash out" ticket for the amount she had taken so that her drawer would balance throughout the day. "At the end of each day, she would reverse the transaction on the teller tape which went to the audit department at the main bank in Poynette, so it looked like she had the correct amount of cash." (R. 15, PSR at p 13.) As the total shortage in her drawer became more significant, Munson began taking cash from the Harmony Grove Branch vault to cover her embezzlement. Then at the conclusion of the day, she would falsify the vault cash ticket to give the appearance that the vault had the correct amount of funds. On the occasions that another branch employee prepared the vault cash ticket, Munson would intercept the ticket and alter it before it went to the main bank.
 
 
 4
 Ultimately, bank audit staff noticed that there had been a great deal of activity in Munson's personal checking account with the bank. During the previous 18 months, there were numerous unexplained cash deposits into her account, and during some months Munson wrote as many as 90 to 125 checks. As a result of this information, on July 18, 1997, an auditor from the main bank counted the cash at the Harmony Grove Branch and determined that the vault was $30,000 short. After the auditor left the branch, Munson prepared a false vault balance ticket to cover the $30,000 shortage. Later that day, after the bank president and the auditor confronted Munson about this discrepancy, she admitted to stealing $30,000 and was terminated.
 
 
 5
 The Presentence Investigation Report (PSR) recommended that a two-level enhancement be applied to Munson's base offense level pursuant to U.S.S.G. § 3B1.3 because she abused a "position of trust." Although Munson objected, the district court found that the enhancement for abusing a position of trust was appropriate. The court sentenced Munson to 15 months' imprisonment to be followed by five years of supervised release, and ordered restitution in the amount of $53,880.31.
 
 II. DISCUSSION
 
 6
 On appeal, Munson argues that the district court relied on outdated precedent and applied an incorrect definition of "abuse of position of trust." Additionally she argues that the court clearly erred in determining that she had abused a position of trust.
 
 
 7
 This court reviews de novo the district court's interpretation of the meaning of "position of trust," but reviews the court's finding that Munson occupied such a position for clear error. United States v. Bhagavan, 116 F.3d 189, 192 (7th Cir.1997). Sentencing Guideline § 3B1.3 calls for a two-level enhancement for a defendant who uses a position of trust "in a manner that significantly facilitated the commission or concealment of the offense...." In order to apply the enhancement from § 3B1.3 the district court must find that: (1) the defendant occupied a position of trust; and (2) the defendant abused her position in a manner that significantly facilitated the commission or concealment of the offense. United States v. Zaragoza, 123 F.3d 472, 481-82 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 317, 139 L.Ed.2d 245 (1997).
 
 
 8
 A. Definition of "Position of Trust"
 
 
 9
 Munson first argues that the district court incorrectly interpreted the meaning of "position of trust." More specifically, she asserts that the district court applied outdated precedent that conflicts with the current language from Application Note 1 to U.S.S .G. § 3B1.3.
 
 
 10
 At the end of 1993, Application Note 1 was revised to state that a position of trust refers to a position "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature."[1] But the application note explains that the enhancement "would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above described factors." U.S.S.G. § 3B1.3, comment. (n. 1).
 
 
 11
 Munson asserts that the district court relied on outdated precedent at sentencing when it referred to United States v. Lamb, 6 F.3d 415 (7th Cir.1993). In Lamb, we stated that the pre-1993 Application Note's "bank teller example has produced an undesirable amount of confusion." Lamb, 6 F.3d at 420; see, e .g., United States v. Hathcoat, 30 F.3d 913, 917-18 n. 2 (7th Cir.1994). We found that the bank teller exception conflicted with the plain language of the guideline. Therefore, we said the relevant question is whether the employee's position provided "access or authority over valuable things." Id. at 420.
 
 
 12
 At sentencing here, the district court stated that, as in Lamb, this case reveals the "unworkable nature of the bank teller example." Munson argues that the district court's citation to Lamb indicates that it relied on the outdated definition for position of trust as meaning "access or authority over valuable things." She asserts that this definition is flatly contradicted by the revised application note and that this court's caselaw concerning abuse of trust "needs an overhaul." Munson states that the 1993 revision comprehensively and clearly defines position of trust to exist if the employee has "substantial discretionary judgment that is ordinarily given considerable deference." U.S.S.G. § 3B1.3, comment. (n. 1). She further argues that this court incorrectly still relies on Lamb's "access or authority over valuable things" definition to decide abuse of trust cases. United States v. Emerson, 128 F.3d 557, 562 (7th Cir.1997); United States v. Strang, 80 F.3d 1214, 1220 (7th Cir.1996); United States v. Brown, 47 F.3d 198, 205 (7th Cir.1995). The government asserts that the record reflects that the court properly applied the definition from the revised application note.
 
 
 13
 The district court did not use the definition "access or authority over valuable things" from Lamb in finding that Munson abused a position of trust. In fact, the district court never mentioned the term "access or authority over valuable things." Instead, the court relied upon Lamb for the proposition that the bank teller exception has created significant confusion in the federal courts and that "[t]he instant case clearly reveals the unworkable nature of the bank teller example." Sentencing Tr. at 8 (quoting Lamb, 6 F.3d at 420). The district judge stated that he read the application note many times. The sentencing transcript shows that the district court relied on the amended application note because the district court paraphrased the note's language and found that the bank placed Munson in a position with professional or managerial discretion. Therefore, the district court's citation to Lamb does not indicate that the district court improperly interpreted § 3B1.3.
 
 
 14
 Munson also asserts that in order for a defendant to receive the enhancement for abusing a position of trust under the amended application note, the defendant must have decision-making authority over how to allocate her employer's money, as opposed to mere clerical discretion. She argues that although she had clerical discretion, as exhibited by her counting money and preparing the vault tickets, she lacked any decision-making authority. Munson draws this clerical exception from the examples given in the application note of actions that would constitute an abuse of a position of trust. In particular, Munson asserts that the examples of a bank executive's fraudulent loan scheme and a guardian embezzling a client's funds indicate that in order to receive the enhancement, an individual must have discretion over how money is allocated. U.S.S.G. § 3B1.3, comment. (n. 1). Munson does not cite to a single federal abuse of trust case that refers to "clerical discretion." According to the revised application note, the relevant question is whether the employee occupied a position with substantial discretion that contributed to facilitating the commission or concealment of the offense, and not whether that discretion could be termed "clerical." Therefore, Munson's clerical discretion argument fails.
 
 
 15
 The district court made clear that it was following the revised application note in finding that Munson abused a position of trust. Therefore, we find that the district court did not incorrectly interpret § 3B1.3.
 
 
 16
 B. Finding that Munson Abused a Position of Trust
 
 
 17
 Having found that the district court did not improperly interpret. § 3B1.3, this court is left to determine whether the district court clearly erred in finding that Munson abused a position of trust. At sentencing, the court adopted uncontested paragraphs from the PSR that included the statement that, "[a]lthough Munson was hired as a teller, she had many more responsibilities at the Harmony Grove Branch." Munson was one of only two full-time employees and her responsibilities included counting the vault cash, preparing the vault cash ticket at the end of the day, sending the paperwork to the main bank daily, setting up new accounts, bookkeeping, and taking loan applications. The district court found that she was assigned tasks that required discretion not provided to ordinary bank tellers. The court based this finding on the fact that Munson was given more responsibilities at the Harmony Grove Branch than other tellers, and that her responsibilities exceeded those of an ordinary bank teller. In conclusion, the district court found that "because the defendant was placed by the bank in a position with professional or managerial discretion this position of trust did significantly facilitate the commission and concealment of the offense...." Therefore, the district court properly looked beyond Munson's "bank teller" job title to the actual nature of her position. Bhagavan, 116 F.3d at 193; United States v. Boyle, 10 F.3d 485, 489 (7th Cir.1993).
 
 
 18
 Munson argues that the district court clearly erred in several regards in making its finding. First, she argues that the court failed to find that her discretion was "ordinarily given considerable deference." U.S.S.G. § 3B1.3, comment. (n. 1). Although the district court did not state that her discretion was given deference, the record shows that it was. Each day Munson either personally prepared a false vault cash ticket or intercepted and replaced the ticket prepared by another employee. Munson then sent the vault cash ticket to the main bank without receiving any review at the Harmony Grove Branch. The fact that Munson's vault cash ticket was ultimately reviewed by the auditing staff at the main bank office does not alter the fact that she received deference in performing this task. United States v. Deal, No. 97-3764, slip op. at 4 (7th Cir. June 9, 1998) (enhancement still appropriate despite the fact that embezzler's autonomy was not complete and financial records were reviewed by an auditor because "[n]o one who is entrusted with large amounts of money is trusted completely.") Munson was placed in a position that allowed her to doctor the vault cash tickets and "throw the auditors off the scent," thereby justifying an enhancement for abuse of a position of trust. Id. Further, "the fact that [Munson] was able to steal so much and escape detection for so long is evidence ... that [s]he had a position of trust...." Id. (comptroller defrauded a shopping center over a three-year period).
 
 
 19
 Second, Munson asserts that the district court's finding that she was not an ordinary bank teller was based on speculation and evidence outside the record. Although the district court compared Munson's job duties to those of tellers at other banks that it had knowledge of, its decision to apply the position of trust enhancement was based primarily on its finding that she had professional discretion in preparing the vault cash ticket and sending it to the main bank daily, and the uncontested fact from the PSR that Munson had more responsibilities than a teller while she worked at the Harmony Grove Branch. "As long as the information is reliable, the district court is entitled to rely on the PSR, as it did here. When the district court adopts the PSR's findings, the defendant must offer more than a bare denial of its factual allegations to mount a successful challenge." United States v. Hall, 109 F.3d 1227, 1233 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 153, 139 L.Ed.2d 99 (1997). Because Munson has never denied that she had more responsibilities at the Harmony Grove Branch than at the main bank, it was not improper for the district court to rely on the statement from the PSR.
 
 
 20
 Third, Munson argues that the district court erred in partially basing its decision on its finding that her job duties included taking loan applications and setting up new accounts. Munson asserts that neither of these duties is relevant to the enhancement determination because they did not facilitate her commission or concealment of the embezzlement. Regardless of these considerations, the district court properly determined that the enhancement was appropriate based on the discretion that Munson had in having access to the vault and preparing the vault cash ticket.
 
 
 21
 In discussing the purpose of § 3B1.3, this court recently explained that where an employee in a position of trust has a decreased probability of getting caught because of her position, a sentencing enhancement is appropriate to counter the decreased risk of getting caught in order to maintain an equal "punishment cost" between ordinary employees and those in positions of trust. Deal, No. 97-3764, slip op. at 3. Additionally, if there are two permissible views of the evidence, a district court's choice between them is not clearly erroneous. United States v. Bush, 79 F.3d 64, 66 (7th Cir.1996); see Deal, No. 97-3764, slip op. at 4 ("We are dealing with matters of degree, and in such cases a good deal of latitude must be allowed the trier of fact."). In this case, it was a permissible view of the evidence to find that Munson had abused a position of trust. Therefore, consistent with this court's caselaw and the revised application note, the district court found that Munson both occupied a position of trust and abused that position in a manner that significantly facilitated the commission or concealment of the offense. Zaragoza, 123 F.3d at 481-82.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The reason that Application Note 1 was amended was to "reformulate[ ] the definition of an abuse of position of trust to better distinguish cases warranting this enhancement." U.S.S.G.App. C., Amendment 492. Prior to November 1, 1993, Application Note 1 stated: "The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." Id